STATE OF IOWA, Appellee, v. MAJOR COOK, Appellant.

**BURGLARY:** Inferring Intent. Intent to commit larceny may not
1 be inferred from the defendant's admission that he "tried" to enter a dwelling house.

**CRIMINAL LAW:** Confessions Involve All Elements of Crime. Ad-
2 missions of the truth of facts not in themselves sufficient to constitute the alleged offense, are not a *confession.* So held where the accused simply admitted, under a charge of attempted burglary, that he "tried" to enter the house, but made no admission, directly or indirectly, as to any felonious intent.

CRIMINAL LAW: Confession—Insufficient Evidence of Corpus De-
3 licti. A confession will not justify a conviction for attempted
· burglary, when the evidence of the *corpus delicti* shows an *in-
tent*, but no *attempt*, to break and enter.

*Appeal from Monroe District Court.*—SENECA CORNELL,
Judge.

MARCH 12, 1920.

THE defendant was indicted, tried, and found guilty on
charge of attempting to break and enter a dwelling house
in the nighttime, with intent to commit larceny, and from
this judgment he appeals.—*Reversed.*

*Price & Hickenlooper,* for appellant.

*H. M. Havner,* Attorney General, and *C. W. Lyon,* As-
sistant Attorney General, for appellee.

WEAVER, C. J.—The indictment charges that, on Au-
gust 5, 1919, and in the nighttime, the defendant unlawfully
attempted to break and enter a certain dwelling house oc-
cupied by one Messer and family, in the
city of Albia, with intent to commit lar-
ceny. The evidence shows without dispute
that the building mentioned was then being used by Messer
and wife as a residence, and that they owned and used
therein more or less household and kitchen furniture. They
also had a small amount of money. The night was warm,
and the outside door, opening into the house from the
porch, had been left unclosed; but the doorway was filled
by a screen, hooked on the inside. Messer and wife were
sleeping in an inner room, the open door to which was in
direct line with the outside door to the porch entrance.
Sometime after midnight, Mrs. Messer, lying upon her bed,
and facing the door, was awakened by a flash of light
thrown on her face. Waking, she saw a man standing on
the porch, just outside the screen, apparently holding a

1. BURGLARY: in-
ferring intent.

flashlight at or near the point where the screen was hooked
to the door post. The woman screamed in fright, and the
intruder left. She does not claim to have recognized him,
Messer was aroused by the cry of his wife, but not in time
to see the person at the door; and the most he says is that
he heard a man walk off the porch. Two or three days lat-
er, the sheriff arrested defendant in Kansas City. As a
witness, he says that, after he had brought him to Albia,
and placed him in jail, defendant expressed a wish to see
the county attorney, and "tell the truth." An interview
was then had between defendant and the county attorney
and the sheriff. What was there said is shown by the tes-
timony of the sheriff only, and is as follows:

"In the conversation, he stated to the county attorney
what he did that night. He said, if we would take him
down the street, he would show us the house that he at-
tempted to get into,—he was at. He said he was at the M.
& St. L. tank, and left and came up the street. After that,
we took him where he indicated he wanted to go. We took
him in my auto. We afterwards picked up Mr. Shaw. We
started from the county attorney's office, and went east on
Benton Avenue to Giltner's corner in the city of Albia,
Iowa. Mr. Cook said, if we would go down to that water
tank down east, and let him come back this way, he could
show us the place better than he could to start from this
end. Coming back in the street, Mr. Vade Shaw, the coun-
ty attorney, myself, and the defendant were in the car. I
know where the Otto Messer house is now; I did not then.
We stopped at the Messer house, and he said, 'That is the
house.' He stated that he had tried to get into that house,
but that he was scared away by someone's hollo or scream.
He said it was about 3:30 o'clock, as nearly as I can recol-
lect. We stopped at the Messer house. I then took him
back to the jail."

Mr. Shaw, who accompanied the party in the auto, cor-

roborates the sheriff's version of what occurred, saying:

"I got in the car and drove out east, near Mr. Giltner's place, then turned around, and drove back west on Benton Avenue. While coming back, the defendant had a conversation with Mr. Dearinger in my presence. Yes, I heard the conversation in which he stated that he had tried to enter, and he indicated the houses. Following that, we drove westward along the street. When we got up to the Otto Messer house, he pointed out that house, and said, 'I was at that house, and tried to get in.' I do not know that he said he was in that house. He said he was up to the door, and someone halloed, I believe he said, and scared him away."

The foregoing constitutes the entire evidence in the case, and is quoted literally from the printed record. No evidence was offered on part of the defendant.

I. When the State had rested, the defendant moved for a directed verdict in his favor. The motion was overruled. It should have been sustained. That the evidence is insufficient to support a conviction is easily demonstrable on several grounds.

In the first place, to sustain a conviction, it must be shown, by evidence beyond reasonable doubt, not only that defendant did attempt to break and enter the Messer residence, but that such attempt was made with the intent of committing larceny. No witness testifies to a fact or circumstance tending to show the alleged larcenous intent. A man laying hold of the door of a dwelling in the nighttime may, of course, be a burglar, intent on larceny; he may be a lecher, intent on gratifying a degraded passion; he may be a tramp, intent only on shelter, or place to sleep; or he may be a drunken derelict, incapable of any conscious intent. In either event, he is, of course, a trespasser; but proof of the fact of his approach to the house, or of his attempt to enter, and no more, has no tendency to prove

that the trespasser intended to commit larceny. See *State v. Bell*, 29 Iowa 316. In the cited case, as in the one at bar, the defendant was convicted upon a charge of breaking and entering a dwelling house in the nighttime, with intent to commit larceny. It was there held that the intent to commit larceny "is one essential element, and without it the offense would not be complete." In the same opinion, it is further said:

"The law does not imply the intent in cases of this kind, from the act of breaking and entering, or entering without breaking."

See, also, 9 Corpus Juris 1030. It is true that the intent may be, and usually must be, established by circumstances, rather than by direct evidence; but it cannot be inferred from the mere attempt to break and enter.

In this case, the intent necessary to constitute the offense charged is left by the State to mere conjecture. It does not appear that anything was stolen or carried away from the Messer home, on the occasion in question, or that there was a word said by the accused, or thing done by him at the time, from which direct or necessary inference may be drawn that he intended to take, steal, or carry away any of the goods or property owned or kept in the building. The State bases its claim for an affirmance of the conviction upon an alleged "confession" made by the appellant. The only evidence, and all the evidence, of such confession that we have is in the matter we have already quoted in full, and it contains not a word of confession or admission of the felonious or unlawful intent, without which there can be no conviction under an indictment for an attempt to commit burglary. The sheriff's story of the circumstances under which the admission, if any, was made, is that the party having the defendant in custody drove to the neighborhood of the Messer home; that they stopped at the house, and defendant said, "That is the house;" that

he tried to get into that house, but was scared away by someone's "holler" or scream. The witness then adds:

"He said it was about 3:30 o'clock, as near as I can recollect. I then took him back to the jail."

The only other witness, Shaw, testifies to no more than is stated by the sheriff.

Giving the utmost allowable effect to these statements by the defendant, they show nothing except that he tried to get into the house. How he tried, or what he did, if anything, to effect an entrance, is in no manner shown or described; and the unlawful motive or intent, without which there was no crime committed, is not so much as mentioned or hinted at. This defect in the State's case is alone sufficient to necessitate a reversal of the judgment appealed from.

II. The State, as we have said, relies upon the defendant's alleged "confession," to support the verdict of guilty. This position is untenable, for two sufficient reasons: First, there is no evidence of any "confession," in 2. CRIMINAL LAW: confessions involve all elements of crime. the legal meaning of that word; and, second, if the statements attributed to the defendant be treated as a confession, it is still insufficient to sustain a conviction, under our statute, Code Section 5491, which provides that:

"The confession of the defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that the offense was committed."

A confession is an admission or acknowledgment of guilt of the very offense charged. It may be made by the statement of the accused when confronted with the charge, or when speaking of the alleged crime, saying, in substance or effect, "I am guilty," or "I acknowledge the truth of the charge;" or, as some authorities hold, by his admission of the essential facts constituting such crime. But an admission of the truth of facts not, in themselves, sufficient to

constitute the alleged offense is not a confession of guilt, although it may be admissible as evidence in support of the charge. The defendant's admission, as we have seen, consists simply in pointing out the house, saying, in substance:

"That is the house. I tried to get in, but was frightened away by the woman's scream."

Under the rule stated, and under all the authorities, his admission that he tried to enter the house, unaccompanied by any direct or indirect admission, or by other circumstantial evidence of an intent to commit larceny, is not a confession, nor is it evidence from which, in the absence of other inculpatory circumstances, the existence of such intent can properly be drawn by the court or jury. *State v. Red,* 53 Iowa 69, 74; *State v. Knowles,* 48 Iowa 598; *State v. Glynden,* 51 Iowa 463; *State v. Abrams,* 131 Iowa 479; *State v. Heidenreich,* 29 Ore. 381; *Shelton v. State,* 144 Ala. 106.

The decision of this court in *State v. Knowles,* supra, is directly in point. The defendants therein being on trial on charge of forgery, the State offered in evidence statements or admissions by the accused, to the effect that he wrote the alleged false signature. Such statements were treated by the trial court as confessions. This we held to be error. It is there said, in reversing a conviction:

"A confession implies that the matter confessed is a crime; and, unless the defendant admitted that he wrote the name, Daniel Slack, to the note *with a fraudulent intent,* his statement was not a confession, because he may have intended such confession to imply that the act was done rightfully."

But, as we have already suggested, even if we were to concede that a confession was proved, it will not sustain a conviction, under the statute quoted, which provides that a

confession will not warrant a conviction,
**3. CRIMINAL LAW:** without other proof that the alleged crime
confession: in-
sufficient evi- was committed by someone. In other
dence of *corpus*
*delicti.* words, to sustain the conviction of the ap-
pellant, the State must be able to point to
some testimony in the record, wholly independent of the
statements of the defendant, upon which the jury could
properly find that, at the time and place mentioned in the
indictment, some person attempted to break and enter the
Messer residence, with intent to commit larceny.

In this respect, the record reveals a fatal lack of evi-
dence. Independent of the alleged confession, the testimony
goes no further than to show that, on the night in question,
some person appeared upon the porch of said residence, and
flashed a light through an open door, protected by a wire
screen, thereby arousing the housewife from her slumbers,
and causing her to scream in fright; whereupon, he turn-
ed away, and disappeared. No one, either then or on the
trial, pretends to have recognized him, or attempts now to
identify him. There is no evidence that the screen door was
opened by the trespasser, or that he attempted to open it,
or laid hands upon it. The most that the woman says, hav-
ing any possible bearing in that direction, is that:

"The flashlight was right where the screen hook was;
he had it pointed toward the screen where the hook was."

This testimony may be entirely true, and yet be also
consistent with the theory that the stranger did no more
than explore the situation, to ascertain, possibly, the feas-
ibility of an entrance, but had not yet opened or attempted
to open the screen. Proof tending to show *intent* to break
and enter, and no more, will not support a finding of an
*attempt* to break and enter. And here we meet again the
insuperable objection that, even if the person prowling
about the door of this building did have it in mind to open
the door and enter, there is no showing of any kind upon

which the alleged intent to commit larceny can be predicated or inferred.

It would be a dangerous precedent to permit this conviction to stand. It may be, and perhaps is, true that the accused is an undesirable citizen, of whose presence the community would be glad to be relieved; but every accused person, without respect to his general merits as a citizen, has the right to insist that no judgment shall be entered, depriving him of life or liberty, except by due process of law, and upon competent and sufficient evidence of his guilt of the very offense with which he stands charged.

For the reasons stated, the judgment of the district court is—*Reversed*.

EVANS, PRESTON, and SALINGER, JJ., concur.

PRESTON, J. (concurring). I concur in the reversal. I would qualify somewhat the language in Paragraph I of the opinion, in regard to proof of intent, because of the use which may be made of it as a precedent. As I understand it, the breaking and entering is the gist of the crime of burglary, or breaking and entering. It is necessary, of course, that there must also be an intent to commit a public offense. So it is when the charge is an attempt. In such cases, intent is difficult to prove. A person might break and enter, and be apprehended in a building or frightened away before he had said or done anything to indicate his intent. A burglar has some intent in breaking and entering the building of another. Usually, it is for gain. In the absence of circumstances indicating some other intent, I think it should be presumed that the breaking and entering is with intent to steal. We have, I think, so held. In one case, we went so far as to say, in effect, that the inference or presumption, with other circumstances, is so strong as to sustain a conviction, even as against evidence tending to show another intent. *State v. Worthen,* 111 Iowa 267;

*State v. Fox,* 80 Iowa 312; *State v. Teeter,* 69 Iowa 717; *State v. Mecum,* 95 Iowa 433. The *Worthen* case has never been overruled or questioned, and is the last pronouncement on the subject.