STATE OF IOWA, Appellee, v. BEN FARRAND, Appellant.

**BURGLARY: Proof of Intent.** Proof beyond a reasonable doubt of the intent charged is always necessary. Proof held insufficient.

*Appeal from Calhoun District Court.*—E. G. ALBERT, Judge.

DECEMBER 13, 1921.

THE defendant appeals from a judgment of conviction upon an indictment charging him with the crime of breaking and entering a dwelling house in the nighttime with felonious intent to commit a public offense (to wit, an assault) therein.— *Reversed.*

*V. P. McManus* and *Healy & Breen*, for appellant.

*Ben J. Gibson*, Attorney General, and *B. J. Flick*, Assistant Attorney General, for appellee.

WEAVER, J.—The dwelling house in question is in the town of Manson, and was occupied by Clara Johnson, a widow, with her son, "Dick," about 11 years old. The defendant is a young, unmarried man, about 24 years old, and has all his life been a resident of Manson. During recent years, he has been engaged, to some extent, in the business of teaming. Defendant became acquainted with young Dick as a boy on the street. Before the alleged offense, Dick had met with an accident, resulting in the amputation or crippling of one hand. Defendant had been in the habit of showing some attention to the injured lad, frequently taking him upon his wagon, in driving about town. A few days before the alleged offense, defendant, accompanied by two other young men of Manson, made an auto trip to South Dakota. On their return, they continued their trip 20 miles eastward to the city of Fort Dodge, where they procured a considerable quantity of an intoxicant, spoken of in the record as "Dago Red," and drank thereof freely during the remainder of the day, coming back to Manson in the evening. Leaving the unconsumed remnant of the Dago Red in their car, they attended a public dance for a while, and then returned to the barn and continued their drinking bout. According to the theory of the defense, and as we think it fairly appears, the defendant and his companions were all intoxicated. After lounging about the barn for a time, one of them said, "I wonder how Dick is getting along with his hand," and something was said about "going down to see him." Later, they left the barn, and separating, two of them went home and defendant went on to the Johnson home. What happened there is the subject of controversy. According to the woman's testimony, her attention was first attracted by the defendant, "going around the house." She says:

"When he went by the door, I called to him and said who he was, and he says, 'Just me,' and I says, 'What do you want?' and he says, 'I want to see Dick.'"

She further says that she refused to open the door, and told him that, if he wanted to see Dick, he should come in the daytime; and while she seems further to say that defendant took off the screen and came through the window, she again makes it plain that she did not see him enter, but heard defendant in the house, and then turned on the light and saw him. She.

testifies that defendant was drunk, staggered about, and went right out of the window, and that he cursed and threatened her. So far as her story indicates any actual assault, she says that defendant staggered and tumbled about, and, staggering toward her, took hold of her arm as she sat in a chair. Defendant, as a witness, admits that he entered the house through the door which Mrs. Johnson opened to him when he asked to see Dick; that he was intoxicated; and that, after entering the house and sitting down for a few minutes, he began to feel sick. · He says that, in attempting to go out, he staggered unsteadily, and fell over against the woman as she sat in her chair. This frightened her and she screamed, and, running out of the door ahead of him, held it from the outside; whereupon, he went out through the window, pushing off the screen as he went. So far as shown, the defendant did not attempt to take, steal, or carry away any of the property in the building, made no demand for money or other thing of value, and indulged in no indecent proposal or solicitation of any kind. It is perhaps true that he might be charged with a technical assault; but the woman's story tends strongly to corroborate the defendant's assertion that he did not touch her person, except in a slight contact resulting from his staggering about, and not with the intent to inflict any personal violence upon her.

There is practically no evidence in the case, except that which is given by Mrs. Johnson and Dick for the State, and by the defendant in his own behalf. The jury found the defendant guilty, and the trial court, having overruled a motion for a new trial, pronounced upon him an indeterminate sentence to the penitentiary for a term not exceeding 20 years.

We think the judgment appealed from ought not to be approved. That the defendant was guilty of an aggravated trespass, for which there is no sufficient excuse or justification, is not to be denied; but we think that the charge that he broke and entered the dwelling of Mrs. Johnson in the nighttime, with the felonious intent to then and there commit an assault, is not sustained by evidence justifying his conviction. The crime charged is one of the gravest known to our laws, one which is justly made punishable by penalties of the most severe character, to which no man should be subjected save upon the clearest

and most satisfactory proof. In this case, we have before us apparently the entire record of the testimony, in minute detail. The woman and her young son are in mentality evidently far below that of average normal persons of their years. Their testimony is a confused and mystifying jumble of contradictions and inconsistencies. We will not attempt to illustrate this situation by quotations from the record, but the truth of this criticism will impress itself on the mind of every fair-minded person who reads it. We do not wish to intimate that these witnesses consciously perjure themselves, but rather to say that, through ignorance or want of intelligent comprehension of questions propounded in clear and simple terms, they are led into self-contradictions which deprive their evidence of probative value.

In support of the motion for new trial, two practicing physicians of the town of Manson, both of whom had professionally treated this family, made affidavit that, in their opinion, both mother and son were mentally deficient and mentally irresponsible, and suffering from dementia præcox. Whether these affidavits are entitled to consideration on this appeal is not particularly material; for the incapacity of the witnesses to appreciate their responsibility when under oath abundantly appears from the record of their testimony.

Even if it should be believed that appellant obtained entrance to the dwelling house without the consent or against the will of Mrs. Johnson, this alone will not sustain a conviction. It must further appear beyond reasonable doubt that such entrance was effected by him with the felonious intent to assault the woman. See *State v. Cook*, 188 Iowa 655; *State v. Bell*, 29 Iowa 316; 9 Corpus Juris 1030. In this respect, the State failed to make a case. Other exceptions taken by the appellant have been argued; but as those already discussed are sufficiently determinative of the appeal, we do not pass upon them.

For the reasons stated, the judgment appealed from is reversed and remanded for further proceedings not inconsistent with the views herein expressed.—*Reversed.*

EVANS, C. J., PRESTON and DE GRAFF, JJ., concur.