STATE OF IOWA, Appellant, v. BERT WOODRUFF, Appellee.

No. 39682.

MAY 7, 1929.

*John Fletcher*, Attorney-general, *Carl S. Missildine*, County Attorney, and *Alexander M. Miller*, Assistant County Attorney, for appellant.

*Walter G. Samuels*, for appellee.

WAGNER, J.—Inasmuch as the defendant has been acquitted by a verdict of not guilty, returned by the jury under direction of the court, our decision can in no way affect the rights of the

defendant, but is important only in determining the law applicable to the facts of the case.

We will first visualize the facts, as shown by the record. The dwelling house which the defendant broke and entered during the nighttime of April 17, 1928, is located at 1206 East Twelfth Street, in the city of Des Moines. It is a two-story house, the first story being occupied, at the time in question, by Mrs. Tellin and her two daughters, who were 12 and 15 years of age. The second story was occupied by tenants, or roomers. The second house to the north, 1218 East Twelfth Street, is a one-story bungalow, which, at the time in question, was occupied by Mrs. Kuble, with whom two young ladies were rooming. The aforesaid houses are situated on the west side of the street, and the house on the lot between them is situated farther back on the lot, so that there is no obstruction to the view from the Kuble home to the Tellin home. The front door to the Tellin home is on the east side of the house, but there is a door on the north side, leading to the apartments upstairs, and also into a hall, from which various rooms of the lower story of the house can be entered. The two lady roomers at the Kuble home were out for the evening, and returned home about 11:30 P. M. They immediately went to their bedroom, and turned on the light. Shortly afterwards, Mrs. Kuble, whose room was on the north side of her home, heard walking on the cinder driveway immediately to the north. She saw a man go to the window of the room occupied by the girls. She immediately went from her bedroom to the living room, and beckoned the two girls to come. The lights in the house were extinguished, and, there being a bright street light immediately in front of the Kuble home, they proceeded to watch the man who had been discovered prowling about the house. They saw him go across the street to the east to another house, and after a little delay, return to the Kuble home, and saw him go from there to the Tellin house. They saw him flash a light on the north door of the Tellin home. Mrs. Kuble put in an emergency call for the police, and in a very short time, three officers arrived, and were informed as to the actions of the man at the Tellin home. The three officers went to the Tellin home, and in going around the house, at the northwest corner thereof, discovered a man's cap, coat, and pants. The Tellin home was in darkness. One of the officers went to

the front door, while the other two remained outside. Mrs. Tellin had heard someone in her living room, just before the officers arrived, and saw the reflections of a flash light. The officer at the front door of the Tellin home was admitted. The door leading to the basement was found open. There was a door leading from the hall to the living room; there was a sofa which had been standing across a corner of the living room, with one end extending over the hallway door, and a floor lamp in the triangular space behind the sofa. This door had not been open for months, and was kept locked, but was found open on this occasion, with the sofa and lamp shoved from the door. The 12-year-old daughter was sleeping in the bedroom, with her mother, and the older girl on a daybed in the dining room. The two girls were not awakened. Almost immediately after the officer gave the alarm at the front door (the east door), the north door hereinbefore referred to was opened, and the defendant walked out of the Tellin home, and approached the clothing at the corner of the house. The clothes had been removed before he entered the house. He was surprised to see an officer in close proximity. To an inquiry made by the policeman, the defendant responded that he did not live there, but roomed there, and that somebody had stolen this clothing out of his room. He was taken to the Kuble home, and identified as the man whom Mrs. Kuble and her two young lady roomers had seen prowling about the neighborhood. He was then taken back to the Tellin home, and in his presence, Mrs. Tellin was asked by one of the officers if she knew the defendant, and she said: "No, I don't; I never saw him before." She was then told of the defendant's claim that he roomed there, to which she responded, "Well, he doesn't,—I never saw him." On the way to the police station, the officers said to the defendant: "You don't live there; you just as well tell us the truth." The defendant hesitated for some time, and finally said that he lived at 728 West Third Street. The officers asked him what he was doing in the Tellin home, and he refused to answer. The defendant was searched at the police station, and nothing was found on his person except a knife, watch, and flash light. The officers testified that they smelled no liquor on him, and saw no signs of intoxication.

The foregoing is substantially all of the testimony in the case. It is not shown that the defendant stole any property at

the Tellin home. The defendant's motion for a directed verdict was based upon the grounds that the State had failed to prove that the defendant broke and entered the Tellin home with the intent to commit larceny therein; that there was a failure of proof that the defendant intended to steal any property or commit larceny. The State bitterly complains of the ruling of the court in sustaining said motion.

It is apparent that there is ample evidence from which the jury could find that the defendant broke and entered the dwelling house. Indeed, there is no evidence to the contrary. The question for determination is: Should the court have permitted the jury to find that his intent was to commit larceny? It is the State's contention that an unexplained breaking and entering of a dwelling house in the nighttime is sufficient to sustain a verdict that the breaking and entering was done with intent to commit larceny. This is the general rule, and is sustained and supported by the weight of authority. See *State v. Worthen,* 111 Iowa 267; *State v. Maxwell,* 42 Iowa 208; *State v. Teeter,* 69 Iowa 717; *State v. Fox,* 80 Iowa 312; *State v. Mecum,* 95 Iowa 433; *People v. Soto,* 53 Cal. 415; *Moseley v. State,* 92 Miss. 250 (45 So. 833); *Woodward v. State,* 54 Ga. 106; *People v. Noon,* 1 Cal. App. 44 (81 Pac. 746); *Burrows v. State,* 84 Ind. 529; *State v. McBryde,* 97 N. C. 393 (1 S. E. 925); *Cady v. United States,* 293 Fed. 829; *Smith v. State,* 51 Tex. Cr. 427 (102 S. W. 406); *Mullens v. State,* 35 Tex. Cr. 149 (32 S. W. 691); *Alexander v. State,* 31 Tex. Cr. 359 (20 S. W. 756); 4 Ruling Case Law 441. Many other authorities upon this proposition could be cited.

In *State v. Worthen,* supra, the defendant was discovered at a late hour of the night in the bedroom of Grace Fort, with his hand upon her person. Upon her calling for assistance, the defendant left the house. The defendant was convicted of breaking and entering a dwelling house with intent to commit larceny. The conviction was affirmed by us. We there said:

"The defendant insists that, though the motive in entering Fort's house cannot be justified, the intent to steal is not to be inferred from these facts. Some presumptions are to be indulged in against one who enters a building unbidden, at a late hour of night, else the burglar caught without booty might escape the

p.nalti~s of. the law. 'The love of gain, the desire to get and have, is so wide a principle of human nature that, other motives being eliminated, that remains as a sort of residuary solvent of conduct.' *Steadman v. State,* 81 Ga. 736 (8 S. E. Rep. 420). People are not accustomed, in the nighttime, to enter the homes of others, when asleep, with innocent purposes. The usual object is theft, and this is the inference ordinarily to be drawn, in the absence of explanation, from breaking and· entering at night, accompanied by flight upon discovery, even though nothing has been taken. *State v. Teeter,* 69 Iowa 718; *State v. Maxwell,* 42 Iowa 211; *State v. McBryde,* 97 N. C. 393 (1 S. E. Rep. 925); *Alexander v. State,* 31 Tex. Cr. App. 359 (20 S. W. Rep. 756).''

In *People v. Soto,* supra, from which, in the *Worthen* case, we quoted approvingly, the Supreme Court of California made the following pronouncement:

''The defendant was indicted for burglary, in having entered a dwelling house in the nighttime, with the intent to commit a petit larceny. The proof was that the defendant, at a late hour of the night, after the family had retired and the lights had been extinguished, entered the building through a window, and was found in a bedroom, in which a woman and three infant children were sleeping in one bed; that he seized the woman by the throat, and threw himself across the bed, but, on her making an outcry, left the building, without any further act of violence, and without having committed a larceny, so far as the evidence shows. The woman further testified that she had no previous knowledge of the defendant, but stated it as her belief that his purpose in entering the building was to have sexual intercourse with her. On this evidence, the jury found the defendant guilty as charged in the indictment, and the defendant appeals. The only ground relied upon for the reversal of the judgment is that the verdict was not justified by the evidence, which, it is contended, did not tend to prove that he entered the building with the intent to commit larceny. But the intent with which he entered was a question of fact for the jury; and though there was no direct evidence of the intent, it might be inferred from the surrounding circumstances. The weight to be given to these was a question properly left to the jury; and when a person

enters a building through a window at a late hour of the night, after the lights are extinguished, and no explanation is given of his intent, it may well be inferred that his purpose was to commit larceny, such being the usual intent under these circumstances. The belief of the woman that he entered with the further intent to have sexual intercourse with her is of no consequence. It was for the jury to determine the intent, and whether her belief was entitled to any weight.''

In *State v. Maxwell*, supra, this court declared:

''If the intent must have distinct and substantive proof, it would almost always be impossible to convict where the defendant did not succeed in going beyond the mere breaking and entering; for no one could tell what his ultimate intention was,—whether to commit a public offense or merely to obtain shelter for the night. The proper doctrine, we think, is that announced in Wharton's Criminal Law, Sec. 1600, as follows: 'The intent may be inferred from the facts. Thus, where a man was found in the nighttime in the chimney of a shop, just above the mantel-piece, and before he had entered the shop, the jury found him guilty of burglary with the intent to steal, upon this evidence only; and the judges confirmed the conviction. * * * The very fact of a man's breaking and entering a dwelling house in the nighttime is strong presumptive evidence that he did so with intent to steal, and the jury will be warranted in finding him guilty, unless the contrary be proved.' ''

In *State v. Teeter*, supra, there was no direct evidence of defendant's intention in entering the building, and the court instructed the jury that, before they would be warranted in convicting the defendant, they must be satisfied beyond a reasonable doubt, not only that he broke and entered the building, but that his intention at the time was to commit the crime of larceny within it; also that, if he broke and entered the building, they should look at all the facts and circumstances disclosed by the evidence, to ascertain the intent with which he entered. With reference to this instruction, we declared:

''It is insisted that this latter instruction is erroneous, for the reason that, under it, the jury were warranted in considering the fact of the breaking and entering in determining whether

the act was done with the intent charged. It is argued that the act of breaking and entering the building, standing alone, evidences no intent beyond the act itself, and the question whether the act was done with the specific intent charged must be determined alone from the other facts and circumstances of the transaction. But this view is not sound.''

In 4 Ruling Case Law 441, we find the following apt language:

''Intent, being a state of mind, is rarely susceptible of direct proof, but must ordinarily be inferred from the facts. The very fact of a man's breaking and entering a dwelling house in the nighttime is strong presumptive evidence that he did so with the intent to steal * * *.''

In *State v. McBryde,* supra, we find the following pronouncement:

''The intelligent mind will take cognizance of the fact that people do not usually enter the dwelling of others in the nighttime, when inmates are asleep, with innocent intent. The most usual intent is to steal; and when there is no explanation or evidence of a different intent, the ordinary mind will infer this also.''

In *Alexander v. State,* supra, the Supreme Court of Texas declared:

'' 'Though there was no direct evidence of the intent, it might be inferred from the surrounding circumstances. The weight to be given to these was a question properly left to the jury; and, when a person enters a building through a window at a late hour of the night, after the lights are extinguished, and no explanation is given of his intent, it may well be inferred that his purpose was to commit larceny, such being the usual intent under such circumstances.' ''

In *Mullens v. State,* supra, we find the following apt language:

''It is beyond dispute that the house was entered for some purpose. There is no contention that appellant was insane, or entered the house through mistake or accident, or that he had

authority to do so. He had some intent in going in there. Where there is no direct evidence of intent, it may be inferred from the surrounding circumstances and facts. The entry was late at night, lights extinguished, owner asleep. It was a store house. The appellant was at the door of the store, making the noise which aroused the occupants, when he fled from the house, without explanation of his conduct. Under such circumstances, it has been held that 'it may be inferred that his purpose was to commit larceny, such being the usual intent under such circumstances.' "

It is quite apparent that the law as announced in the foregoing authorities is sound. To hold otherwise would permit one who breaks and enters a home in the dead hours of the night, but whose presence is detected before he has had time to do anything to indicate his intent, and who flees from the house upon his detection, to go unpunished. The general rule is that, in the absence of explanation, the jury may infer from the fact of his breaking and entering that his intent was to commit larceny. In ascertaining the intent, the jury may take into consideration all the other facts and circumstances disclosed by the evidence and bearing upon that question.

The defendant relies upon the familiar rule of law relative to circumstantial evidence, that the facts proved must be such as to exclude every reasonable hypothesis except that of the guilt of the accused of the offense charged, and he argues that there is no evidence that the defendant's intent was to commit larceny; that it is just as reasonable that his intent was to commit some other public offense. In *State v. Maxwell*, supra, the defendant asked the court to instruct the jury that, where a criminal intent is to be established by circumstantial evidence, the proof not only ought to be consistent with the defendant's guilt, but must be wholly inconsistent with any other rational conclusion than that of his guilt. The court refused the instruction, and told the jury, in substance, that, the intent with which an act is committed being but a mental state of the party accused, direct proof of it is not required; that it cannot ordinarily be so shown; that it is generally derived from and established from all the facts and circumstances attending the doing of the act complained of, as disclosed by the evidence; that the intent with which the de-

fendant entered the dwelling house must be determined by them from all the evidence in the case; that it was not necessary that the prosecution should show that the defendant actually stole anything, etc. With reference to defendant's requested instruction on circumstantial evidence, we said:

"This rule is proper when the *act* which is claimed to be criminal is sought to be established by circumstantial testimony. But when the *act* is proved by direct testimony, and all that remains to be found is the intent which accompanied the act, and which may be inferred from the circumstances accompanying the act, then this principle does not apply, and the true rule is that given by the court."

For authority holding to the same effect, see *Smith v. State,* supra.

The defendant relies upon *State v. Cook,* 188 Iowa 655, and *State v. Farrand,* 192 Iowa 809; but said cases are distinguishable from the instant case and from the authorities hereinbefore cited. In *State v. Cook,* the indictment was not for breaking and entering a dwelling house with intent to commit larceny, but the defendant was therein charged with an attempt to break and enter a dwelling house, with intent to commit larceny. It is apparent from a reading of the case that the court realized that the conviction hinged on flimsy evidence, and the court in no way overruled *State v. Worthen,* supra; *State v. Maxwell,* supra; *State v. Teeter,* supra; *State v. Fox,* supra; *State v. Mecum,* supra. The most that can be said of the *Cook* case is that we refused to apply the general rule in cases of attempt to break and enter with intent to commit larceny. The state of Texas by the aforesaid authorities is committed to the general rule hereinbefore stated, in cases where the charge is breaking and entering with intent to commit larceny, but has refused to apply said rule to the charge of attempt to break and enter with intent to commit larceny. See *Freeman v. State,* 86 Tex. Cr. 331 (216 S. W. 878).

In *State v. Farrand,* supra, relied upon by the defendant, the charge was not breaking and entering with intent to commit larceny, but breaking and entering with the intent to commit an assault. It is only when the charge is breaking and entering with intent to commit larceny that the intent may be inferred from

the unexplained breaking and entering. The reason for this rule is that experience teaches that, in the great majority of cases of unlawful breaking and entering, the act done is with intent to steal. Therefore, the general rule hereinbefore stated, does not apply to cases such as the *Farrand* case, supra.

The defendant, in his argument, refers to the clothing that was found at the northwest corner of the Tellin home, and infers therefrom that the defendant's intent could not have been to commit larceny. He argues that, if his intent was to· commit larceny, he would not desire to impede his escape by replacing his clothing. The same argument would apply, had it been his intent to commit any other public offense.

The defendant also argues that this circumstance has a tendency to prove delirium, degeneracy, or probably insanity. The evidence is to the effect that he was not intoxicated. Moreover, these matters are affirmative defenses, and must be established by a preponderance of the evidence. These matters were not included in the motion for a directed verdict. If they were relied upon as defenses, it was for the defendant to establish them by proper proof.

It is not for us to determine the facts. Our sole duty is to determine the proper rules of law applicable to the facts. It is uncontroverted that the defendant broke and entered the Tellin home; there is no explanation of his breaking and entering said home. His claim, first made, of rooming there, was afterward refuted by him, and shown to be false. The indictment charged the defendant with the breaking and entering of the home in the nighttime, with intent to commit larceny. Under the aforesaid well established rule of law, supported by the great weight of authority, the jury—the triers of the facts—are privileged to infer that his intent was to commit larceny. It was for the jury to say, from all of the facts and circumstances disclosed by the evidence and bearing on the question of intent, whether his intent was to commit larceny.

The court was in error in sustaining defendant's motion for a directed verdict.—*Reversed.*

ALBERT, C. J., and STEVENS, DE GRAFF, and MORLING, JJ., concur.