UNITED STATES, Appellee

v.

DONALD H. MORRIS, Basic Airman,
U. S. Air Force, Appellant

6 USCMA 108, 19 CMR 234

COL A. W. Tolen, USAF, CAPT George M. Wilson, USAF, and 1ST LT
Robert Burns, USAF, for Appellant.

LT COL Emanuel Lewis, USAF, and MAJ Roger H. Miller, USAF, for
Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused appeals from that part of his conviction which finds him guilty of burglary with the intent to commit larceny. He contends that, except for his confession, the evidence is not sufficient to show the intent charged.

A few minutes after midnight on August 18, 1954, Captain Mary Horak went to bed in her room in the Nurses Quarters at the Amarillo Air Force Base. Before retiring she locked the door which opened on the main corridor. She also determined that the door in the bathroom which led to an adjoining room was "closed." The adjoining room was vacant. Shortly afterward, she awakened · with a "sensation of being smothered." She saw a man at her bedside. As she reached for the telephone she was struck on the chin. When she tried to get up she was hit again and knocked out of bed. The intruder fled through the bathroom door.

Subsequent examination of the premises showed that the door from the bathroom to the adjoining room was open. A fatigue cap, bearing the letters "ABD," was found on the bed. The cap was traced to the accused. In the late afternoon he was questioned by agents of the Office of Special Investigation.

The accused was advised of his rights under Article 31. He then voluntarily gave the agents a written statement in which he admitted that he was the person involved in the incident. He said that the "only reason" he entered the Nurses Quarters was "to find some money or something of value." He was planning to get married and he needed funds. In his search, he had gone into the vacant room. He then went into Captain Horak's room through the connecting bathroom. As he bent over the night stand in Captain Horak's room, his cap fell out of his rear pocket and "probably" hit her in the face. She screamed. He got "scared" and "just swung at her."

In a precise and well-framed objection, defense counsel objected to the admission of the accused's pretrial statement. He maintained that the evidence aliunde the confession was insufficient to show an intent to commit larceny. The objection was overruled and the statement was admitted.

By itself, a confession is not sufficient to support a conviction for a crime. Military law also ▆▆▆▆▆▆ ▆ requires that the probable existence of every element of the offense charged, except that of identity, be established by independent evidence. United States v. Villasenor, 6 USCMA 3, 19 CMR 129. Here, the accused concedes that the corroborating evidence requirement has been met as to each element of the burglary charged, except that of the intent to commit larceny.

No direct evidence of the accused's intent appears in the record. Seldom, however, is criminal intent ▆▆▆▆▆▆ ▆ established by such evidence. Rather, intent is generally inferred from conduct of the accused. Thus, in the frequently cited case of State v. Woodruff, 208 Iowa 236,

225 NW 254, the Iowa Supreme Court noted that in most jurisdictions it is the general rule that an intent to commit larceny may be inferred from an unexplained breaking and entering of a dwelling house in the nighttime. The court said (page 257):

". . . The reason for this rule is that experience teaches that in the great majority of cases of unlawful breaking and entering, the act done is with intent to steal."

In a well-reasoned opinion, the board of review concluded that the general rule fairly applies to this case. Although the accused does not dispute the soundness of the general rule, he maintains it has no application when the evidence shows the possible existence of another intent. He argues that, in such a case, there must be affirmative proof of the intent to commit larceny. The same argument was rejected in the Woodruff case. More recently it was also rejected by the Supreme Court of Kansas in State v. Gatewood, 169 Kan 679, 221 P2d 392. Although recognizing that at least one state does not permit the prosecution to rely upon an inference of intent, the court said (page 396):

". . . Frankness requires it be stated there is not complete unanimity of opinion among the courts relative to whether the intent to commit *larceny,* in connection with a burglary charge, must be affirmatively shown to exist as distinct from some other offense that might have been intended. In Simpson v. State of Florida, 81 Fla. 292, 87 So. 920, it was held such intent must be affirmatively shown by direct or circumstantial evidence. In State v. Riggs, 74 Minn. 460, 77 N.W. 302, relied on by appellant, a divided court held the evidence insufficient to disclose an intent to commit larceny.

.  .  .  .  .  .

". . . Numerous cases are cited in a well considered opinion in the Iowa case [State v. Woodruff, 208 Iowa 236, 225 NW 254] holding the clear weight of authority to be that an unexplained breaking and entering of a dwelling house in the nighttime is in itself sufficient to sustain a verdict that the breaking and entering was done with the intent to commit *larceny* rather than some other felony. The Iowa case contains quotations from some of the many cases so holding, which need not be repeated here. The fundamental theory upon which the inference of intent to commit *larceny* is based, absent evidence of other intent or an explanation for breaking and entering, is that the usual object or purpose of burglarizing a dwelling house at night is theft. We are impressed with the soundness of the rule."

We are also impressed with the soundness of the general rule and its applicability here. We hold, therefore, that it could reasonably be inferred from the circumstances that the accused probably had an intent to commit larceny at the time he entered Captain Horak's room.

The decision of the board of review is affirmed.

Judges LATIMER and BROSMAN concur.