UNITED STATES, Appellee

v

JAMES T. SPENCER, Private E–2, U. S. Army, Appellant

9 USCMA 341, 26 CMR 121

No. 11,054

Decided June 6, 1958

*First Lieutenant Philip J. Miller* argued the cause for Appellant, Accused. With him on the brief were *Colonel Edward M. O'Connell* and *Lieutenant Colonel William H. Blackmarr.*

*First Lieutenant John E. Riecker* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel John G. Lee.*

### Opinion of the Court

GEORGE W. LATIMER, Judge:

We accepted the accused's petition in this action to ascertain whether his pretrial confession was admitted into evidence without the Government having established the corpus delicti of the

offense of assault with intent to commit robbery.

During the evening of July 7, 1957, Private Logan, a duty fireman, was making his usual round of water heaters and tanks at Fort Lee, Virginia. He entered the unlit boiler room of a certain building, banked the fire, turned to leave, and while on the way out was struck upon the head by a poker-like object. Stunned but still conscious, he ran from the place over to an adjoining building and, coming upon a group of soldiers, requested the military police and an ambulance. It was less than a minute from the time he was struck that he was back at the building, where he found a group of men standing about the closed door of the boiler room, the scene of the injury. Suddenly the door swung open, a partially dressed figure darted out, shouting, "GET out of my way or I'll shoot," and faded into the darkness before he could either be apprehended or identified. Approximately a week before this incident the victim was counting his money, about thirty-five or forty dollars which he had in his wallet, when he was approached by the accused who asked for a loan. The request was refused.

In his pretrial statement, the accused admitted the assault. He told of waiting behind a furnace in the darkened boiler room until the victim entered. The accused continued, "When LOGAN had fired the hot water heater and turned around to leave the boiler room, I struck him across the head with a piece of stick . . . for the purpose of taking his money." He also admitted that after the assault he removed his shoes, in order to run faster, and stripped off his shirt to be less visible in the dark. The prosecution later introduced into evidence the stick which was found at the scene of the crime and the items of clothing which were collected either in that place or a contiguous barracks.

The corroboration rule in military law requires that some evidence, independent of the confession, must be presented to the court-martial going to each element of the offense ex-

342

cept for the identity of the perpetrator. United States v Villasenor, 6 USCMA 3, 19 CMR 129; United States v Isenberg, 2 USCMA 349, 8 CMR 149. Compare United States v Mims, 8 USCMA 316, 24 CMR 126. We find untenable appellate defense counsel's contention that the elements of an assault were not present, and our recital of the facts is more than an adequate refutation to such an argument. There is, however, more substance to the assertion that the Government failed to present some evidence of the larcenous intent necessary to the crime charged. Outside the confession, four facts were shown: lying in wait, an assault in a darkened boiler room, the need for money a week previous to the assault, and knowledge that the victim possessed the same. In addition, there is the circumstance that no other motive is remotely suggested. From these facts and circumstances, was it reasonable to infer that the accused intended to assault and rob his victim? We answer in the affirmative for it is perfectly proper to establish the corpus delicti by circumstantial evidence. United States v Evans, 1 US CMA 207, 2 CMR 113. As the Chief Judge said in an analogous case, United States v Morris, 6 USCMA 108, 19 CMR 234:

"No direct evidence of the accused's intent appears in the record. Seldom, however, is criminal intent established by such evidence. Rather, intent is generally inferred from conduct of the accused. Thus, in the frequently cited case of State v Woodruff, 208 Iowa 236, 225 NW 254, the Iowa Supreme Court noted that in most jurisdictions it is the general rule that an intent to commit larceny may be inferred from an unexplained breaking and entering of a dwelling house in the nighttime. The court said (page 257):

'. . . The reason for this rule is that experience teaches that in the great majority of cases of unlawful breaking and entering, the act done is with intent to steal.'

"In a well-reasoned opinion, the board of review concluded that the general rule fairly applies to this

case. Although the accused does not dispute the soundness of the general rule, he maintains it has no application when the evidence shows the possible existence of another intent. He argues that, in such a case, there must be affirmative proof of the intent to commit larceny. The same argument was rejected in the Woodruff case."

In the case at bar the accused was apparently short of money and knew the victim possessed the same. The accused was also a fireman, thus well aware of the victim's movements and the best opportunity for assault. He secreted himself in a darkened room where detection would be difficult. When we take those facts into account and consider that an assault in the nighttime under such conditions as we have here is often accompanied by a robbery, it is not unreasonable to infer that a larcenous intent was present. Cf. United States v Parker, 6 USCMA 274, 19 CMR 400.

Thus we conclude that the evidence is sufficient to corroborate the confession, and accordingly that accused's pretrial statement was properly admitted into evidence.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge FERGUSON concur.