UNITED STATES

v.

Michael R. BUSIC, 245 88 7593 Corporal
U. S. Marine Corps.

NCM 75 1396.

U. S. Navy Court of Military Review.

Sentence Adjudged 7 Feb. 1975.

Decided 24 Sept. 1975.

LT B. Karl Zobrist, II, JAGC, USNR, Appellate Defense Counsel.

LT Thomas L. Earp, JAGC, USNR, Appellate Government Counsel.

Before EVANS, MALLERY and GREGORY, JJ.

DECISION

MALLERY, Judge:

Appellant was convicted by general court-martial, contrary to his pleas, of wrongfully damaging a window and an air conditioning duct in a Marine Corps Exchange, the property of the U. S. Government, valued at $232.00; of larceny of several items including eight knives, two radios, two phonographs, two cassette tape recorders, and a pair of binoculars, of a total value of about $851.25, all being the property of the Marine Corps Exchange; and of unlawfully entering the Marine Corps Exchange with intent to commit larceny therein. Appellant was sentenced to a bad conduct discharge, confinement at hard labor for 24 months, forfeiture of $300.00 pay per month for 24 months, and reduction to pay grade E–1. The convening authority approved all the findings as adjudged, except the findings of guilty of wrongfully damaging the Government property. He approved the findings of guilty of that charge and specification but found the window and air conditioning duct to have "some value" vice the value alleged.

The essential facts are uncontroverted. During the early morning hours, at the date and place alleged, a burglar alarm sounded in the Office of the Provost Marshal, indicating that something was amiss in the hardware department in the Marine Corps Exchange. Military police immediately surrounded the exchange building. It was shortly observed that a window pane was missing from one of the windows and that the window itself was ajar. After entering the building the military police searched extensively and finally found appellant hiding under an empty box. Later, it was observed that an air conditioning duct, which had been just inside the broken window, had been ripped from the ceiling and was lying on the floor. The window and the air conditioning duct had been intact and the window had been closed and boarded up at last close of business. There was much evidence adduced concerning the functioning of the burglar alarm system and concerning which, if any, items were missing from the exchange. However, we need not discuss this evidence in detail in view of our disposition of this case. It must be noted, nevertheless, that there was considerable evidence that the items alleged as having been stolen by appellant were verified as missing by a subsequent inventory and had probably been stolen by someone. In addition, there were items missing from the display shelves and show cases. Appellant was not found in possession of any of the missing items. Neither were any of the items ever found. It is possible to infer that, if appellant had stolen the items, they would have been found either on his person or together in some place either inside or outside the exchange building.

While we believe it is possible that appellant stole some or all of the missing goods we are not convinced beyond a reasonable doubt that he did so. We are convinced beyond a reasonable doubt that appellant willfully and wrongfully damaged military property of the United States.

The third charge and specification, alleging that appellant unlawfully entered the Marine Corps Exchange building with intent to commit larceny therein, presents a special problem in view of our disposition of the larceny charge. We are convinced beyond a reasonable doubt that appellant unlawfully entered the exchange building. Therefore, the last remaining issue is whether he did so with the intent to commit larceny therein. The precise legal issue is whether or not the required intent can be inferred from other circumstances where the larceny itself was never actually committed.

The case law on this issue seems to have been applied mainly to burglaries, as distinguished from unlawful entries or housebreakings. However, we believe that the reasoning of those cases is relevant to this case even though the entry here was not of a dwelling house.

The general principle is well expressed in 12 C.J.S. Burglary § 55 which reads, inter alia, as follows:

"In a prosecution for burglary the state must prove the essential intent beyond a reasonable doubt, although it may do so by circumstantial evidence. As the criminal intent alleged in the indictment is an essential element of the offense, it must be established affirmatively by the evidence beyond a reasonable doubt . . . The intent, however, may, generally must, be proved by circumstantial evidence, for as a rule it is not susceptible of direct proof; and it has been held that the evidence of intent sufficient to support a conviction of burglary may be slight, in the absence of any evidence that the entry was made with any other intent. Even where the felony was not actually committed, an intent to commit it may be inferred from the time and manner at and in which the entry was made, or the conduct of accused after the entry, or both. . . . In a prosecution for burglary with intent to commit larceny or theft, the state must prove the intent to steal beyond a reasonable doubt, although it may prove such intent by circumstantial evidence, and, in the absence of an explanation, the jury may infer that defendant's unauthorized pres-

ence in the house at night was with intent to commit larceny. It is unnecessary to prove an actual theft . . . ."

Following is another useful expression of the principle, as contained in 13 Am.Jur.2d, Burglary § 54:

". . . Numerous cases. . . . hold that an unexplained breaking and entering into a dwelling house in the nighttime is in itself sufficient to sustain a verdict that the breaking and entry was done with the intent to commit larceny rather than some other felony. The fundamental theory, in the absence of evidence of other intent or explanation for breaking and entering, is that the usual object or purpose of burglarizing a dwelling house at night is theft. . . ."

The United States Court of Appeals, District of Columbia Circuit, among other Federal Courts, follows the rule expressed above. In the case of *Washington v. United States*, 105 U.S.App.D.C. 58, 61, 263 F.2d 742, 745 (1959), Circuit Judge Burger stated the following:

". . . . In the circumstances of this case intent need not be shown by any specific acts or conduct; the unexplained presence of appellant in the darkened house near midnight, access having been by force and stealth through a window, is ample without more to allow an inference that he was there to steal. . . ."

A later case from the same Court, *United States v. Thomas*, 144 U.S.App.D.C. 44, 444 F.2d 919 (1971), followed the same rule.

The classic expression of the rationale for the rule is contained in *State v. Woodruff*, 208 Iowa 236, 225 N.W. 254, 255 (1929). In that case, the Supreme Court of Iowa aptly explained the reason for the principle in the following terms:

"Some presumptions are to be indulged in against one who enters a building unbidden, at a late hour of the night, else the burglar caught without booty might escape the penalties of the law. 'The love of gain, the desire to get and have, is so wide a principle of human nature, that, other motives being eliminated, that remains as a sort of residuary solvent of conduct'. * * * People are not accustomed, in the nighttime to enter the homes of others, when asleep, with innocent purposes. The usual object is theft, and this is the inference ordinarily to be drawn, in the absence of explanation, from breaking and entering at night, accompanied by flight upon discovery, even though nothing has been taken."

The Court of Military Appeals has followed the rule expressed in *State v. Woodruff, supra*. See *United States v. Morris*, 6 U.S.C.M.A. 108, 19 C.M.R. 234 (1955) and *United States v. Parker*, 6 U.S.C.M.A. 274, 19 C.M.R. 400 (1955). In *Morris*, the reasoning contained in *Woodruff* was quoted and specifically approved. It must be noted, however, in connection with our case, that both *Morris* and *Parker* involved burglary rather than housebreaking, and sufficiency of the proof of the corpus delicti rather than sufficiency of the proof of guilt.

In the case of *United States v. Gluck*, 30 C.M.R. 534 (1961), the Army Board of Review applied the *Morris* rule expressly to a case of housebreaking. Again the issue involved proof of the corpus delicti to corroborate a confession. In that case, the accused confessed, inter alia, to housebreaking into a warehouse with the intention of committing larceny therein. The evidence established that the accused unlawfully entered the warehouse, that watches were missing from their containers in a secured area in the warehouse, and that the containers were disarranged. The watches were not found in the possession of the accused and he was acquitted of larceny. The Board of Review held as follows:

". . . . Under these circumstances it would be unreasonable to infer other than an unlawful taking was the purpose of breaking and entering the warehouse. . . ."

■ We believe that the rationale expressed in *Woodruff* should apply as well to proof beyond a reasonable doubt of the elements of an offense as it does to proof of a corpus delicti. Of course, the independent evidence sufficient to corroborate a confession or admission need not, in and of itself,

prove guilt beyond a reasonable doubt. MCM, 1969, (Rev.), par. 140a (5). However, all of the circumstances surrounding an unlawful entry may, in a particular case, do more than merely corroborate a confession or admission. They may, by themselves, prove beyond a reasonable doubt intent to commit larceny therein.

We also believe that the rationale expressed in *Woodruff* applies as well to housebreaking as it does to burglary. In the case of burglary, the intent of the burglar might be to commit rape or murder vice larceny, although the intent to commit larceny is much more likely. In the case of housebreaking, the intent of the housebreaking is almost certainly to commit larceny, absent a showing to the contrary.

■ We are convinced beyond a reasonable doubt that, when appellant unlawfully entered the Marine Corps Exchange building, he intended to commit larceny therein. We infer this intent from all the circumstances recited above despite the fact that we are not convinced beyond a reasonable doubt that appellant actually committed the larceny. Thus, we are convinced beyond a reasonable doubt that appellant is guilty of the charge and specification alleging housebreaking.

■ Appellant alleges that the Staff Judge Advocate's evaluation of the evidence affecting the building is prejudicially inadequate. In light of our precise holding in this case, we disagree. The Staff Judge Advocate's summary of the evidence is detailed and entirely adequate. His analysis of the elements of the offenses is similarly detailed and is adequate. His analysis of the evidence as it tends to prove or disprove the elements of the offenses is barely adequate as regards the offenses of housebreaking and damaging Government property. As regards the offense of larceny it consists of one sentence as follows: "An inventory was held and showed that the property alleged was missing." That sentence constitutes an inadequate analysis. *However*, our action in connection with that charge removes any possible prejudice to appellant.

We specifically affirm the findings of guilty of the charge and specification alleging willful damage to military property of the United States and of the charge and specification alleging housebreaking. We specifically reverse the findings of guilty of the charge and specification alleging larceny and dismiss the charge. Upon reassessment, we approve only so much of the sentence, as approved below, as provides for a bad conduct discharge, confinement at hard labor for 12 months, forfeiture of $300.00 pay per month for 12 months, and reduction to pay grade E–1.

Senior Judge EVANS and Judge GREGORY concur.