**Benny Ray SALAZAR, Appellant,**
**v.**
**The STATE of Oklahoma, Appellee.**
**No. F–76–42.**

Court of Criminal Appeals of Oklahoma.

Aug. 16, 1976.

Archibald B. Hill, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Annis Kernan, Legal Intern, for appellee.

## MEMORANDUM OPINION

BLISS, Judge.

Appellant, Benny Ray Salazar, hereinafter referred to as defendant, was charged, tried and convicted in the Oklahoma County District Court, Case No. CRF–74–4030, for the offense of Burglary in the Second Degree, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 1435. The jury fixed his punishment at a term of imprisonment of sixty (60) years and from this judgment and sentence a timely appeal has been perfected to this Court.

Defendant Salazar was jointly charged, tried and convicted along with Eugene Page, hereinafter referred to as defendant Page, who received a sentence of imprisonment of thirty-five (35) years and the direct appeal of Page's conviction was affirmed by this Court in *Page v. State* (F–76–47) [unpublished opinion].

The State's first witness at trial was Dennis Lippe who testified that he was employed by the Oklahoma City Police Department and was so employed on the 13th day of November, 1974, when he was dispatched to investigate a reported burglary in progress at 409 Eckroat, Oklahoma City, Oklahoma County. When in the vicinity of that location he passed a pick up being driven by a man with blonde hair. Upon arrival at the duplex located at 405 Eckroat he observed three individuals in the front yard, named Mr. Minnick, Mrs. Moore and her son, Don Moore. Pursuant to a conversation with these individuals, he broadcast a description of the white Ford pickup he had previously observed. He proceeded to the house at 409 Eckroat where he discovered the back door located within a screened porch had been forced open and the south window in the southeast bedroom was open. The gas stove in the kitchen had been disconnected and pulled away from the wall and the living room was in disarray with clothing and other items upon the floor.

The next witness was Eules Minnick who testified that he cut the grass at 409 Eckroat for the owner of the property and prior to the alleged offense the house had been vacant for several months. On the evening of the 13th of November, 1974, he observed two men inside the house near the front door by shining a flashlight through the open back door. When he called for them to come out with their hands raised, a man with blonde hair, whom he identified as defendant Page, came out the back door. Defendant Page then told him that he was looking for his girl friend and that she had lived there two weeks ago. The witness replied that no one had lived there and an argument ensued. He continued to shine the flashlight upon the defendant Page and restrained defendant Page for some time by apparently pretending to have a weapon in his pocket. During this time the other man that was in the house climbed from the southeast window and fled on foot

whereafter defendant Page subsequently got into a white Ford pickup which was parked in the alley near the house and drove away.

Louise Moore testified that she resided at 405–B Eckroat, which was separated from the house at 409 Eckroat by only one other house. On the evening in question she saw two men leave a white Ford pickup parked in an alley near the house at 409 Eckroat and enter the vacant house through the back door. She notified Eules Minnick and telephoned the police and thereafter she began to walk from her back door when a man with the same general physical description as the defendant ran past her. She then observed Mr. Minnick shining a flashlight upon defendant Page behind the house at 409 Eckroat. She observed defendant Page subsequently get into a pick up and drive away from the vicinity just as the police arrived.

Don Moore testified that while returning to his home at 405–B Eckroat on the evening of the 13th of November, 1974, he observed through a window each of the two defendants walking about within the house at 409 Eckroat. Defendant Page was identified as the man with the blonde hair who came out the back door and talked with Eules Minnick before driving away in a white Ford pickup parked in the alley near the house. The defendant was identified as the man who climbed from the window on the south side of the house and ran away. He testified he chased the defendant for a short distance, but when the defendant stopped and told him "keep walking", he did so.

Leon Townley testified that he was the owner of several furnished rental houses in the vicinity of 409 Eckroat, including the house at that address. On the 13th of November, 1974, that house was vacant and had remained so since about the previous May. He routinely checked his rental houses and that particular morning he had ascertained that the house at 409 Eckroat was intact with the doors and windows locked except for the screen door to the back porch which was closed but un-latched. The following morning he discovered that the screen door was missing and that the back door had been forcibly opened, and he observed that a window along the south side of the house was open. The house had apparently been ransacked and furnishings were missing including the cook stove, the refrigerator, a heating stove, some portion of a bedroom suite and only two chairs remained to the dinette. He testified that he had not given anyone permission to enter the house or to remove those items.

The State then rested and the defendant presented no evidence in his behalf.

▋ Defendant's first assignment of error asserts the evidence presented was insufficient to establish a necessary element of the crime of Burglary in the Second Degree, specifically the intent to steal property or commit any felony. Defendant contends that there is an absence of proof of the essential element of intent to steal, and "substituted therefor was proof of an actual stealing unconnected to this defendant."

From the foregoing statement of facts, we cannot agree with this contention. The evidence presented at trial disclosed that the house had been ransacked in addition to the discovery of missing furnishings. The evidence established that the defendant unlawfully broke and entered the residence at 409 Eckroat on the evening of the 13th of November, 1974. This Court has previously held that it is not necessary that property actually be taken in order for intent to be established. *Ryans v. State*, Okl.Cr., 420 P.2d 556, and *Heinrich v. State*, Okl.Cr., 482 P.2d 629. Also noteworthy is this Court's language in *Drennan v. State*, 69 Okl.Cr. 348, 102 P.2d 952, wherein it states:

". . . When it is shown that a defendant broke and entered a store in the night time, it may ordinarily be presumed that he did so with intent to commit larceny, though at the time he was detected he had not appropriated any property, and the question of intent is for the jury, to be gathered from the

circumstances attending the entry, and prior and subsequent thereto. 9 Am.Jur., Burglary, § 61; *State v. Woodruff,* 208 Iowa 236, 225 N.W. 254; Annotation, Ann.Cas.1913C, 519."

In that case the Court went on to note:

"It is only where there is a total failure of substantial evidence of the elements, or some one element, of an offense that this court on appeal is permitted to reverse a conviction on the ground that the evidence is insufficient to sustain it. The jury is the exclusive judge of the weight of the evidence and credit to be given to the witnesses. Where there is a direct conflict in the evidence, or it is such that different inference may be properly drawn from it, the jury's determination will not be interfered with upon the ground that the evidence is insufficient to sustain a conviction, where there is competent evidence tending to prove each element of the offense charged."

We are of the opinion that the question of the defendant's intent was properly submitted to the jury and that there is sufficient evidence in the record to have authorized the jury to find the defendant guilty as charged.

The defendant's second assignment of error asserts that there was a total failure of proof connecting this defendant with the crime. Such a contention is not supported by the record. The testimony of Don Moore, an eye witness to the burglary, disclosed that he pursued the defendant after defendant fled from the scene of the crime and that he came face to face with him when the defendant stopped and told him to keep walking. The unwavering character of the identification by Moore is certainly reflected by the transcript of the trial proceedings. For this reason we have no authority to invade the province of the trier of facts where the verdict is based upon competent evidence.

The defendant's final contention is that the sentence imposed by the jury was excessive. We have consistently held that the question of excessiveness of punishment must be determined by the study of all the facts and circumstances in each particular case, and the Court of Criminal Appeals does not have the power to modify a sentence unless we can conscientiously say that under all the facts and circumstances the sentence is so excessive as to shock the conscience of this Court. See *LaRue v. State,* Okl.Cr., 404 P.2d 73 (1965). We need only observe that the defendant's sentence of sixty (60) years was within the range prescribed by law, and in light of the defendant's three (3) prior felony convictions, does not shock the conscience of this Court.

For the above and foregoing reasons the judgment and sentence appealed from, is accordingly, AFFIRMED.

BRETT, P. J., and BUSSEY, J., concur.