This is an appeal from a conviction for second degree burglary specifically breaking and entering in the daytime with the intent to steal. Punishment was set at eight years in the penitentiary. The appellant has been represented at trial and on appeal by retained counsel.
On Saturday, March 13, 1976, the appellant went to the residence of Christine Tarver in Phenix City. He knocked on the front door and told Ms. Tarver that he wanted to come in and tell her something. He also stated that he had some money to give her. After the appellant went to the front door he went to the side window and told Ms. Tarver the same things. However Ms. Tarver did not let the appellant inside the house and told him to leave. She did not take the money offered by the appellant.
At approximately 7:00 on the evening of the following day the appellant returned to Ms. Tarver's residence. Again he went to her front door and knocked saying he wanted to come in and talk to her. Ms. Tarver told him to leave, that she did not want to talk to him and did not want his money. However the appellant "just kept on saying the same thing over and over". He started kicking the front door and lost the heel on his shoe. Then he went around to Ms. Tarver's bedroom window on the side of the house. He pulled a board off a broken window that had one or two panes missing and stuck his head and shoulders in the window.
The appellant stayed about two hours and most of the time he was begging Ms. Tarver to open the door for him. During this time a "running conversation" was had between Ms. Tarver and the appellant with the latter "wanting to come in" and Ms. Tarver refusing to let him in.
During these two hours Ms. Tarver's niece came and Ms. Tarver told her to go tell her mother to call the police. While the appellant was raging outside, the house was occupied by Ms. Tarver, her four children who were in their room playing and Ernestine Strieter.
Ms. Tarver's brother, Clifford Austin, arrived and observed the appellant with his head in the window and his shoulders up to the window. The appellant's shoulders were too big to get through the window. Mr. Austin asked the appellant if he was trying to break in his sister's house and the appellant pulled his head out of the window. Austin went inside the house to see if his sister was all right. While Austin was inside, the appellant put his head back in the window and said he was going to "whip" Austin. Shortly thereafter the police arrived.
Detective Robert Sawyer of the Phenix City Police Department testified that the appellant was intoxicated in his opinion.
Lieutenant Chappell Ray of the Phenix City Police Department stated that when he arrived the appellant was sitting in the back of Detective Sawyer's car. He investigated and found the front door damaged and the heel to the appellant's shoe on the front porch: The appellant's shoe was found beside the porch. Detective Sawyer also testified that in his opinion the appellant was intoxicated. *Page 511 
Because of the importance of the following facts we have reserved them until this point in our discussion of the events surrounding the commission of the charged crime.
Ms. Tarver "knew" the appellant both in the accepted and Biblical senses of the term. Ms. Tarver's husband was in prison; the last time she saw him was in June of 1974. Ms. Tarver "dated" the appellant for about three months during 1975. During the time that they were "dating" Ms. Tarver and the appellant had had sexual relations about seven times and the appellant had given her twenty-five dollars on five occasions because "he wanted to help her out". At trial, Ms. Tarver's youngest child was seventeen months old. Ms. Tarver was also pregnant. Neither of these children was fathered by the appellant.
Ms. Tarver testified that she did not know why the appellant was trying to break into her house. The appellant never "offered" or threatened to steal anything from her house.
The appellant took the witness stand in his own behalf and stated that he saw Ms. Tarver about 11:00 on the night of March 14th. He testified that he was inside her house and was "trying to go to bed with her", but she said that she didn't have any birth control pills. The appellant also testified that he kept trying to go to bed with her but Ernestine knocked at the door and Ms. Tarver sent him out a side door. The appellant told her he "would have some money the next day to give her".
Sunday, true to his word, the appellant returned with the money. He admitted kicking the front door and accidentally pulling the board off the window while trying to talk to Ms. Tarver after she refused to let him in the front door. He denied ever having entered the window with his head or shoulder. He stated that his purpose in going to see Ms. Tarver was to give her some money and not to steal anything from her.
The appellant has a criminal history of attempt to assault to rob, petit larceny, and attempt to commit burglary in the first degree. He denied ever stating that he would kill Ms. Tarver if she took out a warrant for his arrest. The state placed Ms. Tarver's mother on the witness stand to show that the appellant did make such threatening remarks.
 I
The appellant argues that the state failed to prove the requisite intent necessary to sustain a conviction for breaking and entering with the intent to steal, and that the trial court thereby erred in denying his motion to exclude the state's evidence.
The evidence clearly shows a breaking and entering however there is absolutely no evidence that the appellant, at any time, formed or maintained any intent to steal anything from Ms. Tarver.
The state cites the rule that where the evidence shows a breaking and entering, the jury may reasonably infer the intent to steal from the mere presence of the accused in a dwelling or other building under circumstances showing a breaking and entering. However this is not a true and accurate statement of this rule of evidence.
The proper rule is that the unexplained breaking and entering into a dwelling house in the nighttime is in itself sufficient to sustain a verdict that the breaking and entry was done with the intent to commit larceny rather than some other felony. 12 C.J.S. Burglary § 55, at p. 732; 13 Am.Jur.2d Burglary § 52 at 353; Behel v. State, 40 Ala. App. 689, 122 So.2d 537 (1960); 2 Wharton, Criminal Law, §§ 408-409 at pp. 25-30.
 "The general rule is that in the absence of explanation, the jury may infer from the fact of his breaking and entering that his intent was to commit larceny." State v. Woodruff, 208 Iowa 236, 225 N.W. 254 (1929) cited in both C.J.S. and Am.Jur.2d citations given above. (Emphasis added)
Once there is evidence or explanation to the contrary the presumption disappears. The foundation and reason for this presumption and its limitations are crystal clear. *Page 512 
 "The intelligent mind will take cognizance of the fact that people do not usually enter the dwelling of others in the nighttime, when the inmates are asleep, with innocent intent. The most usual intent is to steal; and when, there is no explanation or evidence of a different intent, the ordinary mind will infer this also." Woodruff, 225 N.W. at 256.
Here there is no evidence whatsoever that the appellant broke and entered with the intent to steal. There are no circumstances which would even tend to indicate that his intent was such. If this were all the evidence presented, the jury could have properly inferred that the appellant committed the breaking and entering with the intent to steal. However the state's own evidence not only shows a lack of evidence on intent but reveals that the appellant wanted to come in to "talk" and give Ms. Tarver some money. The facts are highly and strongly indicative of the intent of the appellant. His own actions, excluding his testimony, reveal his intent. The breaking and entering, if accompanied by any intent, was with the intent to have adulterous relations with Ms. Tarver. However it is not burglary to enter a house for adulterous purposes, when adultery is not a felony. State v. Cooper,16 Vt. 551 (1844). See also Hooks v. State, 154 Tenn. 43,289 S.W. 529 (1926). In reaching this conclusion we have considered the state's evidence as construed most strongly against the appellant. From the actions of the appellant and the attendant circumstances there is no reasonable probability that he broke and entered with the intent to steal. Such an inference or presumption is not justifiable under the circumstances of this case. 3 McElroy, The Law of Evidence In Alabama, § 451.01 at 267. "Presumptions . . . may be looked on as the bats of the Law, flitting in the twilight but disappearing in the sunshine of actual facts." IX Wigmore on Evidence 289.
We have read and carefully considered all the evidence adduced upon the trial. We are clear to the conclusion, and it is the judgment of this court, that the state failed to meet the burden of proof necessary for conviction. To allow the verdict to stand would permit a conviction based on "guesswork, suspicion, and conjecture". Sauls v. State, 29 Ala. App. 587,199 So. 254 (1940). We note that the original complaint against the accused was obtained by Ms. Tarver in the Recorder's Court of Phenix City and charged the appellant with breaking and entering with the intent to murder or do bodily harm. Our decision is made with caution and proper regard for the function of the jury in a criminal case. However an indictment for burglary must set out and define the felony intended to be committed. Of course, any issue of fact was for the jury. We see no evidence at all, however, that the appellant had any intention to steal.
We forego a discussion of the other issues raised on appeal as we have considered them and are of the opinion that they are not likely to arise again on a retrial of the appellant.
For good cause shown, this case is due to be
REVERSED AND REMANDED.
All Judges concur.