Appellant, George O. Popwell, was indicted on October 8, 1982, by the Jefferson County Grand Jury for attempted burglary in the second degree, in violation of §§ 13A-4-2 and 13A-7-6, Code of Alabama 1975. The case went to trial on February 6, 1984; however, a mistrial was declared on February 7, 1984, because of a variance in the date of the offense as reported in pretrial conference and the date disclosed at trial. The case was reset for trial, and on March 30, 1984, a Jefferson County jury found appellant guilty as charged. The trial court subsequently sentenced appellant to 10 years in the penitentiary.
The State's evidence tends to establish that, in the early morning hours of July 1, 1982, Deborah Wright heard a noise outside her bedroom window, and, upon investigation, observed a young man trying to remove the window screen with a screwdriver. Ms. Wright observed this person for several minutes, until the screwdriver entered the window area. Ms. Wright was positioned 6 to 8 inches from the intruder's face; there was nothing to obscure the view and the lighting was good. When the screwdriver entered the screen and was being removed, Ms. Wright screamed, "What do you think you're doing?" The intruder looked up and then ran off.
Ms. Wright contacted the Birmingham Police Department, and Officers Wallace and McNutt responded. The officers did not take a description from Ms. Wright, but she indicated to them that she could identify the person she observed outside her window.
Later, around 11:00 a.m., Ms. Wright contacted the "Crimestoppers" Division of the Birmingham Police Department and spoke with a female officer named King. "Crimestoppers" is a community-based program sponsored by the Birmingham Area Chamber of Commerce, and its job is to assist the police and other law enforcement agencies in solving felonies. This program creates reenactments of certain crimes and broadcasts these reenactments during television and radio news reports. Ms. Wright stated that she gave Officer King a description of the person she had observed and Officer King told her to watch the "Crimestoppers" program scheduled to air that evening on a local television station's news report.
Ms. Wright watched the re-enactment and contacted Officer King the next day. The program depicted an incident similar to what Ms. Wright had experienced, and the actor looked similar to the person Ms. Wright had observed. As a result of this communication, Ms. Wright was later contacted by Sgt. King (not the same person previously identified as Officer King). Sgt. King requested that Ms. Wright view a series of 18 or 19 photographs. Ms. *Page 43 
Wright identified a photograph of appellant as that of the person she observed outside her window the morning of July 1, 1982. At trial Ms. Wright made a positive in-court identification of appellant as the person she had observed attempting to gain entry into her apartment.
At trial the State introduced the testimony of Ms. Pamela Cox, who was also a burglary victim. It was established on voir dire that approximately 4 months previous to the Wright incident appellant entered the home of Ms. Cox, located on the south-side of Birmingham, stroked her arm as she lay sleeping, and took $100 from her purse. The trial court allowed Ms. Cox's testimony to go to the jury, over appellant's objection, and overruled defendant's motion to suppress, which asserted the ground that this evidence was of a distinct criminal act, having no connection with the instant case.[1]
As a general rule, in the prosecution for a particular crime, evidence of other acts which of themselves constitute distinct and independant offenses is not admissible. However, this general rule is subject to several well-established exceptions.Pack v. State, 461 So.2d 910, 913-14 (Ala.Crim.App. 1984), and cases cited therein; Jones v. State, 460 So.2d 1384, 1388
(Ala.Crim.App. 1984), and cases cited therein. Evidence of other crimes may be admitted in the trial of the now-charged crime when it is relevant to the now-charged crime and tends to prove an element of the now-charged crime which is at issue.Jones, 460 So.2d at 1388; Seymore v. State, 429 So.2d 1188
(Ala.Crim.App. 1983). In the instant case, the trial court allowed the evidence of the burglary of Ms. Cox's apartment to go to the jury under the identity and/or intent exception to the general rule. See generally, C. Gamble, McElroy's AlabamaEvidence §§ 69.01 (5), (8) (3d ed. 1977).
This is clearly not a factual situation in which the identity exception is operable. The identity exception is commonly referred to as the "signature" exception. In Brewer v. State,440 So.2d 1155, 1161 (Ala.Crim.App. 1983), it was stated:
 "One of the common threads running through all the treatise-writers' explanations of the signature exception is that a strict test of similarity between the charged and now-charged offenses should be applied. McCormick observes the following:
 "`[T]he courts are stricter in applying their standards of relevancy when the ultimate purpose of the state is to prove identity, or the doing by the accused of the criminal act charged than they are when the evidence is offered on the ultimate issue of knowledge. . . .'"
This strict test of similarity has long been held to mean that the two offenses have been committed by some "novel or extraordinary means or in a peculiar or unusual manner." Wilderv. State, 30 Ala. App. 107, 109, 1 So.2d 317, 319 (1941). See also Arthur v. State, 472 So.2d 665 (Ala. 1985); Brewer;Brasher v. State, 249 Ala. 96, 30 So.2d 31 (1947); and cases cited therein. We have thoroughly reviewed the factual circumstances of the burglary of Ms. Cox's apartment and the attempted burglary of Ms. Wright's apartment, and find that the degree of similarity required to bring Ms. Cox's testimony within the purview of the identity exception, and therefore make it admissible, is not present in the facts of the two incidents. Although we note that there were certain unusual features surrounding the Cox case, these features were not present in the Wright case. The only similarities we find are: (1) Both acts occurred in the southside area of Birmingham; (2) both victims identified a white male; (3) both incidents occurred in the early morning hours before dawn; and (4) the perpetrator ran off when observed. We cannot say that these general similarities are sufficient to invoke the identity *Page 44 
exception, given the high degree of similarity required to fall within this exception.
The intent exception is also inapplicable under the facts of the case at bar. It has been generally stated that "[i]f the accused is charged with a crime that requires a prerequisite intent, the prior or subsequent criminal acts are admissible to show that he had the necessary intent when he committed the now charged crime." Gamble, supra, at § 69.01 (5) (emphasis in original). See also Seagle v. State, 448 So.2d 481
(Ala.Crim.App. 1984); Brewer; Jones v. State, 439 So.2d 1308
(Ala.Crim.App. 1983); 1 Wharton's Criminal Evidence § 245 (C. Torcia 13th ed. 1972). However, "[t]he State has no absolute right to use evidence of prior acts to prove the elements of an offense or to buttress inferences created by other evidence."Cofer v. State, 440 So.2d 1121, 1124 (Ala. 1983). As this court stated in Brewer, 440 So.2d at 1159:
 "`When the element the State bears the burden of proof on can "be inferred from the act itself," the State may not use extraneous offenses as circumstantial evidence of that element in its case in chief.' Ruiz v. State, 579 S.W.2d 206, 209
(Tex.Crim.App. 1979). `[W]hen the act charged is not equivocal, but the criminal intent is a necessary conclusion from the act, this theory of other acts as showing intent may not be availed of.' McCormick on Evidence § 190 at 450 n. 42 (E. Cleary 2d ed. 1972)."
See also Schroeder, Evidentiary Use in Criminal Cases ofCollateral Crimes and Acts, 35 Ala.L.Rev. 241, 260 (1984) ("Evidence that is offered to prove intent may not be relevant if intent is not contested or if intent can be inferred from the commission of the act itself"). We view this as a sound rule of law, given the "highly prejudicial nature of the evidence," Brewer, 440 So.2d at 1158, and its tendency to interject "a collateral issue into the case which may divert the minds of the jury from the main issue." Cofer, 440 So.2d at 1124.
Can the intent to commit a burglary be fairly and reasonably inferred from the facts and circumstances of the case at bar? We answer in the affirmative. It is clearly the law in this jurisdiction that "the unexplained breaking and entering into a dwelling house in the nighttime is in itself sufficient to sustain a verdict that the breaking and entry was done with the intent to commit larceny rather than some other felony." Cliattv. State, 348 So.2d 509, 511 (Ala.Crim.App. 1977) (emphasis in original). See also Behel v. State, 40 Ala. App. 689,122 So.2d 537 (1960). This case is somewhat different from Cliatt andBehel, since here we are dealing with an attempt rather than a completed act of entry. An attempted burglary is defined in 13 Am.Jur.2d Burglary § 29 (1964) as:
 "an act done with the intent to effectuate a burglary, carried beyond mere preparation to commit it but falling short of its actual commission. An indictable attempt thus consists of two important elements: (1) an attempt to commit burglary, and (2) a direct ineffectual act done toward its commission."
See also Groneau v. State, 201 So.2d 599, 602 (Fla.Dist.Ct.App. 1967). In order to prove an attempted burglary, the State must show an act done with the intent to effectuate the alleged burglary. Intent has been defined as:
 "a state of mind existing at the time a person commits an offense. If intent required definite and substantive proof, it would be almost impossible to convict, absent facts disclosing a culmination of the intent. The mind of an alleged offender, however, may be read from his acts, conduct, and inferences fairly deducible from all the circumstances."
13 Am.Jur.2d Burglary § 52. In Groneau, 201 So.2d at 602, we find:
 "Although an overt act does not establish the particular intent to commit a specific crime, yet intent, being a state of mind, or mental process, may be proved by the statement or act of the person whose act is being scrutinized and may also be inferred from the facts and circumstances as is the case in consummated crimes. 1 Wharton's Crim. Law, Attempts, § 234 (12th ed.). State v. Tomblin, *Page 45 
1942, 124 W. Va. 264, 20 S.E.2d 122; State v. Leach, 1950, 36 Wn.2d 641, 219 P.2d 972."
In the case at bar we find that it was unnecessary to introduce the testimony of Ms. Cox to establish a prima facie showing that appellant intended to commit a burglary. The testimony of the victim, Ms. Wright, was sufficient to allow the jury to make a finding of intent. Ms. Wright positively identified appellant as the person she observed with a screwdriver attempting to remove the screen from her bedroom window; the incident occurred shortly before daylight; the appellant fled when confronted; and, most importantly, no explanation was offered to explain his presence. Based on this evidence, the jury could have rationally and reasonably concluded that the actor intended to unlawfully enter Ms. Wright's apartment and commit a theft therein if not interrupted. It was not necessary that appellant gain actual entry into the apartment in order to allow an inference of his intent to commit a theft once inside the apartment. See Crumpv. State, 43 Ala. App. 136, 181 So.2d 620 (1965); Cooper v.State, 33 Ala. App. 407, 34 So.2d 188 (1948).
Having found the testimony of Ms. Cox to be inadmissible under the two exceptions authorized by the trial court, we hold that it was reversible error to allow this testimony to go to the jury. For this reason, the judgment of the trial court must be reversed.
In view of our holding above, we find it unnecessary to address the remaining issues raised by appellant in brief. However, while it is not necessary for us to pass upon the sufficiency of the indictment in this case, we point out that an indictment for burglary must set forth and define the crime intended to be committed. See Coleman v. State, 443 So.2d 1355,1358 (Ala.Crim.App. 1983); Cliatt v. State, supra; 13 Am.Jur.2dBurglary § 36. As a general rule, the use of broad terms such as "intent to commit a felony" is not sufficient, for the particular felony must be specified.
 "The averment that the accused has broken and entered a dwelling house for the purpose of committing a felony fails wholly to apprise him of the specific offense which it is claimed he intended to commit. The defendant is not to be oppressed by the introduction of evidence which he cannot be prepared to meet."
13 Am.Jur.2d Burglary § 36.
For the reasons stated above the judgment is due to be, and it is hereby, reversed, and the case remanded to the trial court.
REVERSED AND REMANDED.
All Judges concur.
[1] It should be noted that Ms. Cox's testimony at trial differed from her voir dire testimony in that the prosecution failed to establish in its case-in-chief the theft of $100.