The appellant, Clarence Holmes, was found guilty of burglary in the second degree and was sentenced to life imprisonment pursuant to the Habitual Felony Offender Act.
Daisy Wilform testified that she lived alone in her apartment and that, on the night in question, she left her apartment for approximately five minutes in order to visit two elderly neighbors who were sick. She locked her door upon her return and went in the bathroom. She heard a noise coming from within her apartment, where upon she responded by saying "Yes," but no one replied. The door to the bathroom was not completely shut and she could see someone through the crack in the door; at trial she identified the appellant as that person. She testified that the appellant walked down her hall and into her bedroom. She then observed him turn the light on in the bedroom, take her purse, her watch, some gold earrings, a jewelry box, and her billfold. She testified that he was in her apartment less than five minutes before leaving through the front door. She then telephoned the police and Officer Martin came to her apartment in response to her call. She informed Officer Martin upon his arrival of what had happened.
 I.
The appellant argues that the trial court erred by denying him, as an indigent, funds "for a private and more complete psychiatric evaluation"; he says this action "denied the appellant his right to assert the affirmative defense of insanity in violation of his constitutional rights." The record indicates that prior to trial the court granted the defense counsel's motion for a psychiatric examination. Dr. William M. Patterson submitted a report finding that the appellant did not appear to have any major psychiatric disorder or history of psychiatric treatment. He further found that the appellant should be able to constructively work with his defense counsel and, therefore, the trial court was satisfied that there was no sufficient grounds for granting the defense counsel's subsequent request for funds for a private psychiatric examination. The defense counsel claims that the first examination lasted for only an hour and that the report of that examination was "sketchy, vague, and obviously . . . of no value to the trial court in determining if there is any evidence to substantiate a plea of insanity." He therefore claims that under Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087,84 L.Ed.2d 53 (1985), he, being indigent, should be provided with funds to obtain a private examination in order to assert the affirmative defense of insanity. *Page 1310 
 " 'We therefore hold that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense. This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own. Our concern is that the indigent defendant have access to a competent psychiatrist for the purpose we have discussed, and as in the case of the provision of counsel we leave to the State the decision on how to implement this right.' Ake, 470 U.S. at [83], 105 S.Ct. at 1097, 84 L.Ed.2d 53.
 "Even under Ake, the defendant's motion was properly denied, as the indigent defendant does not have a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own. 470 U.S. at [83], 105 S.Ct. at 1097, 84 L.Ed.2d 53. See also Clark v. State, 467 So.2d 699, 702 (Fla. 1985); Tuggle v. Commonwealth, 230 Va. 99, 334 S.E.2d 838, 843
(1985); Commwealth v. Erickson, 356 Mass. 63, 248 N.E.2d 270 (1969)."
Isom v. State, 488 So.2d 12, 13 (Ala.Cr.App. 1986).
The appellant was provided with a psychiatric examination by Dr. Patterson and, thus, was accorded his rights perAke. Furthermore, "it is to be noted that Ake does not reach noncapital cases. Ake, 470 U.S. at [86], 105 S.Ct. at 1099,84 L.Ed.2d 53 (Burger, C.J., concurring)." Isom v. State, supra, at 13.
 II.
The appellant contends that the psychiatric report that the trial court used for its determination of sanity was deficient because it does not state that the appellant was sane at the time of the alleged offense. Nevertheless, the appellant offered no evidence that he was presently insane or incompetent to stand trial; nor did he offer any evidence that he was insane at the time of the offense. See Gales v. State,338 So.2d 436 (Ala.Cr.App.), cert. denied, 338 So.2d 438 (Ala. 1976) ("If there was any reason to believe the appellant insane, then a psychiatric examination would not have been wasteful. There is no basis in the record for such a relief."Id., at 438.)
This court has previously addressed a case in which the appellant argued that the trial court should have conducted a pre-trial determination under § 15-16-22, Code of Alabama
(1975), on the issue of whether he was insane at the time of the offense. Hopkins v. State, 429 So.2d 1146 (Ala.Cr.App. 1983). The appellant in Hopkins offered as evidence a doctor's affidavit which indicated that the appellant was insane at the time of the crime. This court held that "[w]hen, as in the case before us, it affirmatively appears that the defendant is presently sane and competent to stand trial (notwithstanding the fact he may have been insane when he committed the act charged) there is no barrier to proceeding with the trial."Hopkins v. State, supra, at 1156. Because the psychiatric examination found the appellant presently sane and competent to stand trial, there was no error in its omission to indicate whether the appellant was insane at the time of the offense.
 III.
The appellant argues that the trial court erred in denying his motion for mistrial based on a statement made by Officer Martin on cross-examination. The record indicates that the defense counsel made, and was granted, a motion in limine to exclude evidence of an alleged incident in which the appellant had previously entered Daisy Wilform's residence and taken money from her. The trial court on voir dire heard the testimony of Daisy Wilform concerning this prior incident and thereafter excluded any evidence either of the prior incident or regarding the prior incident. Ms. Wilform testified that her identification of the appellant as the burglar was based *Page 1311 
solely upon voice identification. She testified that she was unable to view the appellant on the prior incident. Subsequently, during the defense counsel's cross-examination of Officer Martin, the following transpired:
 "Q: Did you make any rough notes on that occasion basically stating verbatim what Mrs. Wilform told you on that occasion?
"A: No, sir; I just completed the report.
 "Q: Now, you have the report there in front of you?
"A: Yes, sir; a copy of it.
"Q: Would you read that report to the jury?
"A: Just the narrative section?
 "Q: Just what is written down here of what Mrs. Wilform tells you — told you what happened that night.
 "A: Victim reported she latched the screen door only and then went inside her residence. When victim came out of the bathroom she saw suspect going out of the front door or [sic] her residence. Victim discovered the suspect had stolen one yellow gold lady's watch, name unknown, value $100.00; one jewelry box containing assorted jewelry, $65.00; one black pocketbook valued at approximately $20.00. The pocketbook contained assorted personal papers. Suspect has broken in before.
 "[DEFENSE COUNSEL]: Oh, no. May it please the Court. May I approach the bench? Make a motion for mistrial?
"THE COURT: You asked the question. Overruled."
The trial court had previously sustained the defense counsel's objection to the admission of evidence regarding this prior incident. However, the defense counsel, through his own questioning, elicited testimony regarding the prior incident and, thus, invited the error. See Dixon v. State,481 So.2d 434, 438 (Ala.Cr.App. 1985); Shadle v. State, 280 Ala. 379,194 So.2d 538 (1967).
 "A motion for mistrial implies a miscarriage of justice and should only be granted where it is apparent where justice cannot be afforded. Young v. State, 416 So.2d 1109 (Ala.Cr.App. 1982). A trial judge is allowed broad discretion in determining whether a mistrial should be declared, because he is in the best position to observe the scenario, to determine its effect upon the jury, and to determine whether the mistrial should be granted. Woods v. State, 367 So.2d 982 (Ala. 1978); Duncan v. City of Birmingham, 384 So.2d 1232
(Ala.Cr.App. 1980); Wadsworth v. State, 439 So.2d 790 (Ala.Cr.App. 1983), cert. denied, Wadsworth v. Alabama, [466] U.S. [930], 104 S.Ct. 1716, 80 L.Ed.2d 188 (1984)."
Dixon v. State, 476 So.2d 1236, 1240 (Ala.Cr.App. 1985). See also Samuel v. State, 455 So.2d 250 (Ala.Cr.App. 1984) (wherein a trial court's granting of a motion in limine did not provide adequate grounds for a motion for mistrial). Any prejudice caused to the appellant because of the admission into evidence of this previous incident was invited by the defense counsel's open-ended question of Officer Martin, and the trial court did not abuse its discretion in denying the motion for mistrial.
 IV.
The appellant claims that the indictment is void on its face and does not contain enough information to inform him of the charge. Specifically, he argues that he was not adequately informed of the charges against him. He contends that neither the date nor the time of the incident in question was contained in the indictment. He also maintains that the indictment is misleading because he is charged with "theft, in violation of Section 13A-7-6 of the Code of Alabama"; Section 13A-7-6
relates to burglary and not theft. The indictment in this case states:
 "CLARENCE HOLMES whose name is to the grand jury otherwise unknown, did, knowingly enter or remain unlawfully in a lawfully occupied dwelling house of Daisy Wilform, with intent to commit a theft or felony therein, to-wit: theft, in violation of Section 13A-7-6 of the Alabama Criminal Code, against the peace and dignity of the State of Alabama." *Page 1312 
"An indictment for burglary must set forth and define the felony intended to be committed. Cliatt v. State, 348 So.2d 509
(Ala.Cr.App. 1977)." Coleman v. State, 443 So.2d 1355, 1358
(Ala.Cr.App. 1983). The indictment in the instant case properly set forth that theft was the felony intended to be committed. Furthermore, according to § 15-8-30, Code of Alabama (1975), "[i]t is not necessary to state the precise time at which an offense was committed in an indictment; but it may be alleged to have been committed on any day before the finding of the indictment, or generally before the finding of the indictment, unless time is a material ingredient of the offense." Time is not a material element of robbery. O'Such v. State,351 So.2d 676 (Ala.Cr.App.), cert. denied, 351 So.2d 677 (Ala. 1977). " 'The indictment in this case is couched in language so clear that any person of common understanding would know that the crime of robbery was charged against appellant.' " Summersv. State, 348 So.2d 1126 (Ala.Cr.App.), cert. denied,348 So.2d 1136 (Ala. 1977), as quoted in Bush v. State, 431 So.2d 555,558 (Ala.Cr.App. 1982), affirmed, 431 So.2d 563 (Ala. 1983),cert. denied, 464 U.S. 865, 104 S.Ct. 200, 78 L.Ed.2d 175
(1983).
 V.
The appellant argues that the trial court erred by giving an improper jury charge in that "the trial court essentially added to the alternative elements of the crime." Specifically, the appellant contends that the court "intermingles and/or substitutes the words 'knowingly and unlawfully' in direct conflict with the Burglary Statute, therefore, confusing the jury and prejudicing the Appellant." However, § 13A-7-6, states in pertinent part that "[a] person commits the crime of burglary in the second degree if he knowingly enters or remains unlawfully in a building with intent to commit theft or a felony therein"; the indictment charges that he did "knowingly enter or remain unlawfully"; and the judge's jury charge concerning this offense was as follows:
 "It alleges that Clarence Holmes, whose name is to the grand jury otherwise unknown, did knowingly enter or remain unlawfully in a lawfully occupied dwelling house of Daisy Wilform with the intent to commit a theft or felony therein, to-wit: theft, in violation of Section 13A-7-6 of the Alabama Criminal Code.
 "Now, what does 13A-7-6 of the Alabama Criminal Code say? It says this: A person commits the crime of burglary in the second degree if [he] knowingly enters or remains unlawfully in a building . . .
 "First, that the defendant, Clarence Holmes, knowingly entered or remained unlawfully in this dwelling."
We can find no conflict between the burglary statute, the trial court's charge, and the indictment. The appellant's claim is without merit.
 VI.
The appellant asks this court to review the sufficiency and the weight of the evidence.
 "To establish burglary, the prosecution must prove: (1) The intruder 'entered or remained unlawfully,'. . . . There is no requirement that a technical breaking be established. . . . (2) The intruder 'knowingly' entered or remained unlawfully. . . . This means that the intruder must be aware of the fact that he has no license or privilege to enter or remain. (3) The invaded premises constitute a 'building.' (4) The intruder had an intent to commit theft or felony. . . ."
Sections 13A-7-5 through 13A-7-7 Commentary, Code of Alabama
(1975). The testimony of Daisy Wilform sufficiently presented these elements, and, from the victim's testimony, the jury could have properly inferred the appellant's intent to commit a theft once inside the apartment. See Popwell v. State,480 So.2d 41 (Ala.Cr.App. 1985).
AFFIRMED.
All the Judges concur. *Page 1313