[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 575 
The appellant was found guilty of three counts of selling cocaine and one count of selling marijuana, in violation of § 20-2-70, Code of Alabama (1975). He was sentenced to 10 years and one day for each offense, the sentences to run concurrently.
 I
The appellant argues that, because exhibits, including video tapes, cocaine, and marijuana, were never formally ruled as admitted into evidence, they were not before the jury and, in their absence, the State failed to sufficiently prove a prima facie case. However, while the video tapes were recording the drug buys, the buys were also being witnessed by the Chief of Police of Troy, Alabama, and an investigator with the Alabama Bureau of Investigation Narcotics Division, who both testified to the drug buys as they had observed them. Moreover, a criminalist from the State Forensic Laboratory testified that some of the exhibits were analyzed and found to be marijuana and cocaine. Therefore, the State proved a prima facie case, as the exhibits were merely cumulative of witnesses' testimony.
Furthermore, where real or demonstrative evidence has not been formally introduced into evidence, but has been used in connection with the giving of testimony, it is evidence in the case and may properly be considered by the jury. Miller v.State, 518 So.2d 801 (Ala.Cr.App. 1987), and cases cited therein. See also C. Gamble, McElroy's Alabama Evidence, § 123.01(6) (3d ed. 1977).
 II
The appellant argues that the bags of cocaine and the bag of marijuana should not have been admitted into evidence because a proper chain of custody was not established by the State. The record indicates that the Troy police chief testified that he took possession of the bag of marijuana and two of the cocaine bags immediately after the appellant sold them and that he placed them in sealed envelopes. On June 5, 1985, he gave them to Captain Grady Wiggins, of the Troy Police Department. He testified that Captain Wiggins carried the envelopes to the State Crime Lab in Enterprise, Alabama, so that the contents could be analyzed. He testified that the exhibits were in substantially the same condition as when he observed them in the drug deal and when he took possession of them immediately following the sale. Captain Wiggins testified that he transported the envelopes to the State Forensic Laboratory. Joseph Saloom, of the State Forensic Lab, testified that these exhibits were received at the lab from Officer Wiggins. He testified that he first came in contact with them on June 10, 1985, when he opened them and began his analysis.
The other bag of cocaine was collected by an investigator with the Alabama Bureau of Investigation Narcotics Division, who testified that he picked up the cocaine immediately following the sale. He stated that he sealed it and kept it in his custody until he delivered it to the State Forensic Lab in Enterprise. Joseph Saloom testified that that exhibit was received by the lab from the investigator and that he received the exhibit on June 10, 1985, and on that date opened the envelope and began his analysis.
The appellant argues that because there is no evidence as to who received *Page 576 
the exhibits at the State Forensic Lab, and who kept possession of them until Joe Saloom began his analysis, the State did not prove a sufficient chain of custody. However, a weak link in the chain of custody presents a question of credibility and weight to be afforded the evidence by the jury, rather than its admissibility. Grice v. State, 481 So.2d 449, 451 (Ala.Cr.App. 1985). The State need only prove to a reasonable probability that the object is in the same condition as, and not substantially different from, its condition at the commencement of the chain. Sommer v. State, 489 So.2d 643, 645 (Ala.Cr.App. 1986). The State proved a sufficient chain of custody for these exhibits' admission into evidence.
 III
The appellant argues that the trial court erred in admitting testimony by the Troy Chief of Police that was allegedly hearsay. The testimony concerned information relayed to the witness by an informant. The witness was allowed to testify that the informant had told him that he had had a conversation with the appellant and that the appellant was to come to his house on that night. The witness had previously testified to the same fact without objection. See Jelks v. State,411 So.2d 844 (Ala.Cr.App. 1981). Moreover, such testimony was not error, as it was not hearsay, because it did not go to prove the matter asserted. The testimony was introduced to show the reasons for Chief Reeves's actions. Specifically, the testimony was introduced not to prove that the appellant was to go to Griffin's house, but to show the motivation behind Chief Reeves's going to the house and setting up the video equipment. See Tillis v. State, 469 So.2d 1367, 1369-70 (Ala.Cr.App. 1985). See also Tucker v. State, 474 So.2d 131, 132
(Ala.Cr.App. 1984), reversed on other grounds, 474 So.2d 134
(Ala. 1985); Adams v. State, 459 So.2d 999, 1002 (Ala.Cr.App. 1984).
 V
The appellant argues that the trial court erred by refusing to allow defense counsel to rehabilitate a witness who had been impeached by the prosecutor's eliciting her admission that she had been convicted of selling marijuana. The appellant contends that he should have been permitted to ask the witness questions which would have allegedly attacked the credibility of the undercover informant. The informant did not testify at trial. Such questions would clearly not have rehabilitated the witness.
Sale of marijuana is a crime involving moral turpitude,Gholston v. State, 338 So.2d 454 (Ala.Cr.App. 1976), and therefore evidence of the conviction was properly used to impeach the witness.
 "Impeachment of a witness by proof of his conviction of a crime involving moral turpitude authorizes proof of his good general reputation as a whole or with respect to truth and veracity, either or both. This is true whether the fact of such conviction is elicited on cross-examination of the witness or is otherwise proven."
C. Gamble, McElroy's Alabama Evidence, § 176.01(4) (3d ed. 1977).
Defense counsel's questions of the witness on redirect examination were not an attempt to prove her good general reputation, but rather an attempt to impeach the informant, who was not a witness at trial. Therefore, the trial court properly sustained the prosecutor's objection to the questions.
 VI
The appellant contends that the trial court committed reversible error by making remarks to the jury concerning the possible length of the trial. The remarks made prior to and at the beginning of the trial were as follows:
 "Now if this case goes to trial it will go then and you will be through here late tomorrow afternoon at the latest unless something unforeseen happens and we don't foresee that now. At the very latest it would finish up some time Wednesday morning.
 "Once we get this done though, we can move on rapidly with the trial. *Page 577 
 "By the way, if you ladies and gentlemen are wondering, you will be through here today."
The record reveals that the appellant failed to object to these remarks; therefore, they are not subject to review unless they are "grossly improper." Miles v. State, 476 So.2d 1228, 1235
(Ala.Cr.App. 1985). "For a particular remark to amount to grossly improper error requiring reversal, it must have influenced the result of the case. Lokos v. State,434 So.2d 818 (Ala.Cr.App. 1982)." Id. There is nothing in the record to indicate that these introductory remarks to the jury had any influence on the result of the case.
 VII
The appellant argues that he was entrapped into committing the charged offenses; specifically he says that he was induced by undercover informant Griffin to pay for drugs and then bring them to his trailer where he could collect Griffin's share of the money upon delivery of the drugs. He further submits that he had just returned from a drug rehabilitation center and that Griffin took advantage of his vulnerability. Although the appellant cites Sherman v. United States, 356 U.S. 369,78 S.Ct. 819, 2 L.Ed.2d 848 (1958), to support his argument, the facts of Sherman are clearly distinguishable from those of the present case. In Sherman, the government informer met the appellant at a doctor's office, where both were being treated for narcotics addiction. The informer asked the appellant to help him obtain narcotics for his own use, but the appellant seemed reluctant to do so. The informer persisted until the appellant made several small purchases of the narcotics, selling half to the informer. In the present case, the State provided evidence, through video tapes and eyewitnesses, that the appellant brought the narcotics to Griffin's trailer and was handed money in return. Reeves testified that Griffin told him that the appellant offered to sell him the narcotics. The appellant contended that the video tape which was shown in court did not accurately portray the events of the evening in that, although it appeared to be a sale, the people involved had actually pooled their money to buy the narcotics. Thus, he argued it was not a sale.
The appellant did not establish a defense of entrapment. There is no indication that the agents of the State created a substantial risk that the appellant would commit an offense which he was not otherwise ready to commit. United States v.Dickens, 524 F.2d 441, 444 (5th Cir. 1976), cert. denied,425 U.S. 994, 96 S.Ct. 2208, 48 L.Ed.2d 819 (1976).
 "The defense of entrapment is not available where a law enforcement officer does not induce the commission of the offense but merely affords an opportunity to one who already intends to violate the law. Owens v. State, 291 Ala. 107, 278 So.2d 693 (1973); Watson v. State, 439 So.2d 762
(Ala.Cr.App. 1983). For the prospective buyer of contraband to make the initial contact with the trafficker is not an 'inducement' as is contemplated in the definitions of the defense of entrapment. A drug transaction may be initiated by an undercover agent without a defendant's being 'instigated, induced, or lured' as those words are generally used in the definition of the defense of entrapment."
Johnson v. State, 501 So.2d 568, 570 (Ala.Cr.App. 1986).
Moreover, there is no evidence in the record to support the appellant's claim on appeal that Griffin used the appellant's vulnerability upon return from the drug rehabilitation program to induce his participation in the offense.
 VIII
The appellant argues that he did not receive a constitutionally fair trial because his counsel was ineffective. The appellant raises eight grounds for a finding of his counsel's ineffectiveness; however, four of these grounds concern the admissibility of the video tapes and narcotics. Because these exhibits have previously been held properly admitted, we do not find that counsel was ineffective based on those grounds. The appellant also claims that his trial counsel was ineffective for failing *Page 578 
to subpoena several witnesses; two of them were out of the country and one who was out of the state. However, the record indicates that the appellant did not ask that they be subpoenaed until the day before trial. The appellant indicated that one of the witnesses was a psychiatrist who had been treating him prior to the alleged offenses. However, the trial court noted that insanity was not entered as a defense and that anything the doctors testified to concerning insanity could be objected to by the prosecutor. However, the trial court agreed to attempt to contact the doctors in order to secure their presence. The appellant contended that he had asked his attorney previously whether his doctors should be present, but the appellant's counsel stated that the appellant had never requested the presence of the doctors. We do not find that the appellant's counsel was ineffective on this ground. SeeDobbins v. State, 487 So.2d 1018, 1019-20 (Ala.Cr.App. 1986);Cotton v. State, 481 So.2d 413, 415-16 (Ala.Cr.App. 1985).
The appellant further argues that his trial counsel was unprepared and failed to make a thorough investigation into the circumstances of the case and that there was a conflict of interests between the appellant and his counsel. A hearing was held the day prior to trial in which the trial court noted that the appellant was indicted in December 1985. His arraignment was continued on March 7, 1986 and he pleaded not guilty in March 1986. Thus, the appellant had approximately one year to prepare for trial. The trial court further noted that the appellant did not appear for trial in September and the court issued an alias writ of arrest and conditional bond forfeiture and had the appellant arrested. The appellant testified that his attorney had contacted the appellant's parents and informed them of the date he was to appear, but alleged that his parents had relayed an incorrect date. The appellant's counsel had filed a motion to withdraw on the basis that the appellant had not contacted or communicated with him since the time of appointment and that the appellant failed to appear at trial. Counsel further noted in his motion that the appellant's whereabouts were unknown. However, his counsel testified that, following the appellant's arrest, he had met with the appellant on three occasions. The trial court found that if the appellant was not prepared for trial, it was his own fault and that his counsel had made every attempt to accommodate him. The trial court further noted that he believed that the appellant was attempting to avoid a trial date.
It is clear that the reasonableness of counsel's actions may be determined or influenced substantially by an appellant's statements or actions. Strickland v. Washington, 466 U.S. 668,691, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). "Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." Id. A defendant is not denied effective assistance of counsel merely by reason of a disagreement with his attorney. Haynes v. State, 461 So.2d 869
(Ala.Cr.App. 1984). In order to establish ineffective assistance of counsel, an appellant must show that his attorney's performance was so deficient as to fall below objective standards of reasonableness and, further, that this deficiency actually prejudiced him and deprived him of a fair trial. Stringfellow v. State, 485 So.2d 1238 (Ala.Cr.App. 1986). The appellant has failed to meet this burden of proof and, after a thorough review of the record, we find that the appellant's trial counsel diligently represented his interest.
Finally, although the appellant argues that there was a conflict of interest in that his attorney also represented a co-defendant who testified in the appellant's behalf, the record fails to substantiate this claim.
 IX
The appellant argues that he did not receive a constitutional trial because the court denied his motion for continuance based on lack of adequate preparation. The motion was made just prior to trial and a hearing was held following the striking of the jury. The trial court held that the motion was merely a delay tactic by the *Page 579 
appellant and, in view of the amount of time that the appellant had for preparation as well as his leaving the State and failing to appear for trial, the motion was denied. The appellant cites Wicker v. State, 433 So.2d 1190 (Ala.Cr.App. 1983), to support his argument. However, under the guidelines for determining whether the absence of a witness necessitates a continuance set forth in Wicker, the appellant has not shown "that there had been an effort to secure the presence of the witness until the day of the trial." Id. at 1197. Because the appellant has failed to show any diligence in his efforts to procure the witnesses' presence at trial, we hold that the trial court did not abuse its discretion in denying the continuance. "Granting a continuance is always discretionary with the court. Watson v. State, 389 So.2d 961 (Ala.Cr.App. 1980). This is true even where an alleged lack of preparation by counsel is the result of the refusal of the accused to cooperate with counsel. Godfrey v. State, 383 So.2d 575
(Ala.Cr.App. 1980); Boswell v. State, 290 Ala. 349,276 So.2d 592 (1973)." Cotton v. State, 481 So.2d 413, 416 (Ala.Cr.App. 1985).
 X
The appellant argues that his Fourth Amendment right against unreasonable search and seizure was violated by the video tape surveillance. Appellant claims that because he was in the private residence of a third party, he possessed a privacy interest. However, merely being legitimately on certain property at the time of a search is not enough, Rakas v.Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); the appellant bears the burden of proving that he had a legitimate expectation of privacy in the property searched.Rawlings v. Kentucky, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561,65 L.Ed.2d 633 (1980). "[T]he defendant's Fourth Amendment rights are violated only when the challenged conduct invadedhis legitimate expectation of privacy rather than that of a third party. Rakas v. Illinois, 439 U.S., at 143,99 S.Ct., at 430; id., at 149, 152, 99 S.Ct. at 433, 435 (Powell, J., concurring); Combs v. United States, 408 U.S. 224, 227,92 S.Ct. 2284, 2286, 33 L.Ed.2d 308 (1972); Mancusi v. DeForte,392 U.S. 364, 368, 88 S.Ct. 2120, 2123-24, 20 L.Ed.2d 1154
(1968)." United States v. Payner, 447 U.S. 727, 731,100 S.Ct. 2439, 2443-44, 65 L.Ed.2d 468 (1980). (Emphasis in original.) Because the video cameras were set up in Griffin's trailer, wherein the appellant had no reasonable expectation of privacy, the appellant has failed to show that his Fourth Amendment rights were violated by an unreasonable search and seizure.
 XI
The appellant argues that the trial court improperly permitted the prosecutor to impeach Willie Moultry, a defense witness. The following transpired during the cross-examination of Willie Moultry:
 "Q. You are his [the appellant's] nephew? Okay. Are you the same Willie J. Moultry who was convicted of selling or possessing cocaine in the Circuit Court of Pike County, Alabama in case number CC85-151 on March 24, 1986?
 "[DEFENSE COUNSEL]: Objection, Your Honor, that's not the proper form of question.
"THE COURT: Overruled.
 "Q: Are you the same Willie J. Moultry who was convicted of the sale of cocaine in case number CC85-151 in the Circuit Court of Pike County, Alabama on March 24, 1986?
"A: No, sir.
 "Q: Well, were you convicted of possession of cocaine?
"A: Possession of cocaine.
"Q: In that case?
"A: Yes, sir."
It is clear that a witness may be impeached by a conviction for a crime involving moral turpitude, C. Gamble, McElroy'sAlabama Evidence, § 145.01 (3d ed. 1977) and that the sale of cocaine is such a crime. Gholston v. State, supra (sale of marijuana). However, misdemeanor possession of marijuana for personal use does not involve moral turpitude, Luker v. State,361 So.2d 1124 (Ala.Cr.App.), writ dismissed, 361 So.2d 1127
(Ala. 1978), and, for purposes of *Page 580 
impeachment, felony possession of marijuana for personal use and not for resale is not a crime involving moral turpitude.Ex parte McIntosh, 443 So.2d 1283 (Ala. 1983). Although the prosecutor could not properly impeach the defense witness by asking if he had been convicted of possession of cocaine, this error does not warrant reversal. During the direct examination of the witness, the defense counsel elicited testimony that the witness, along with the appellant and Arthur Lee Griffin, had been buying drugs and using them together for some time. Thus, defense counsel "opened the door" for the prosecutor's questions. See Holmes v. State, 505 So.2d 1308, 1311
(Ala.Cr.App. 1987). See also Freeman v. State, [Ms. 8 Div. 200, March 22, 1988] (Ala.Cr.App. 1988). Moreover, although the trial court overruled defense counsel's objection to the form of the question, which inquired whether the witness had been convicted of selling or possessing cocaine, the prosecutor, nonetheless, rephrased his question to ask whether the witness had been convicted of the sale of cocaine. Although the prosecutor thereafter inquired as to whether the witness had been convicted of possession of cocaine, the appellant failed to object to the question or to the witness's subsequent admission. See Ringer v. State, 489 So.2d 646 (Ala.Cr.App. 1986).
 XII
The appellant argues that a fatal variance existed between the indictment and the proof presented at trial. Specifically, the appellant argues that the evidence indicated that it was the common practice among Willie Moultry, Griffin, and the appellant for one of the three to purchase the drugs, and thereafter for the others to reimburse the purchaser for their share of the drugs. The appellant argues that this evidence varies from the indictment, which charged him with the unlawful sale of the narcotics. The State presented evidence at trial, by way of testimony and demonstrative evidence, to prove each of the four drug sales. Thus, despite the appellant's theory of the case and rendition of the facts presented during his defense, the State presented sufficient proof of the offenses as charged in the indictment. The instant indictment was neither misleading nor of such a nature that the appellant was deprived of notice. Ex parte Hightower, 443 So.2d 1272 (Ala. 1983); Coker v. State, 396 So.2d 1094 (Ala.Cr.App. 1981).
AFFIRMED.
All Judges concur.