MOORE, Chief Justice
(concurring in part and dissenting in part).
I dissent from the majority’s holding that the State submitted sufficient evidence at trial to sustain a conviction for second-degree burglary.
Because the majority opinion does not include the facts relevant to the suffieien-cy-of-evidence issue, I will recount them here in order to adequately express my reasons for dissenting. The Court of Criminal Appeals, in its unpublished memorandum, stated the facts in this case as follows:
“The evidence at trial tended to establish the following. Angela Humes testified that at approximately 10:30 one evening, Swearingen entered the apartment that she shared with Allison Segal through an unlocked door. According to Humes, she was upstairs in the bathroom when she heard some keys rattle. She walked out and found Swearingen at the top of the stairs. Humes testified that when she confronted Swearingen, he asked where Segal was, said he needed to talk with her, and indicated that he was going to Segal’s bedroom. Humes, uncertain whether Swearingen was a friend of Segal’s, asked him his name; he gave the name ‘Ted.’ Humes asked Swearingen to leave, and he did. Humes testified in a photographic lineup.
“Segal testified that she did not know Swearingen or anyone named Ted. (R. 110.) She further testified that she had *250 left the apartment for only a few minutes to return a video on the evening Humes encountered Swearingen. According to Segal, when she was getting into her car to leave the apartment, a red van was parked so close to her driver’s door that she had to enter her car from the passenger’s side. When she returned to the apartment approximately 10 minutes later, the van was gone and she learned that an uninvited man had entered the apartment. A few days later, [Segal] saw the van that she believes was parked closely to her car on the night of the intrusion at her apartment complex. She got the tag number and reported it to law-enforcement officers, who determined that the red van belonged to Swearingen’s father.
“Humes and Segal testified that they did not know Swearingen and that he did not have permission to enter their apartment.
“The defense presented testimony that Swearingen was at Humes and Se-gal’s apartment complex that night, but maintained that Swearingen was not the man who had entered the apartment.”
Swearingen v. State, (No. CR-99-1805, November 27, 2000) 820 So.2d 172 (Ala.Crim.App.2000) (table). The Court of Criminal Appeals then affirmed Swearingen’s conviction for second-degree burglary under § 13A-7-6, Ala.Code 1975.
On appeal, Swearingen argues that there was insufficient evidence from which a jury could reasonably conclude that he had the intent to commit a theft in Segal’s apartment. The State argues that sufficient evidence from which to infer an intent to commit a theft may be found in Swearingen’s unlawful and unexplained presence in the apartment and bedroom and in the fact that, when confronted, he gave a false name to Humes.
Swearingen may be convicted of burglary in the second degree only if he “unlawfully enter[ed] a lawfully occupied dwelling-house with intent to commit a theft or a felony therein.” § 13A-7-6(b), Ala.Code 1975 (emphasis added). The intent-to-commit-a-theft-or-a-felony element distinguishes the crime of burglary from the crime of trespass in the first degree.[1] Intent is, of course, a state of mind, and must usually be inferred from surrounding circumstances and the facts testified to by witnesses. McCord v. State, 501 So.2d 520, 528-29 (Ala.Crim.App.1986). This Court has held that the intent to commit a theft may be inferred from “ ‘the unexplained breaking and entering into a dwelling house in the nighttime.’ ” Popwell v. State, 480 So.2d 41, 44 (Ala.Crim.App.1985) (quoting Cliatt v. State, 348 So.2d 509, 511 (Ala.Crim.App.1977)) (emphasis omitted).
In the past, this Court and the Court of Criminal Appeals have affirmed burglary convictions in cases where the defendant did not actually commit a theft but where the defendant’s actions evidenced an intent to steal. In those cases, the jury could infer such an intent from the evidence. See, e.g., Popwell v. State, 480 So.2d 41 (a homeowner saw the defendant attempting to remove a window screen with a screwdriver); Burell v. State, 680 So.2d 975 (Ala.Crim.App.1996) (a homeowner returned to the house to see the defendant running out the back door and, after the homeowner went inside and was struck by another person in the house, the homeowner found a duffel bag filled with his property); Frazier v. State, 567 So.2d 879 (Ala.Crim.App.1990) (the defendant used a fire poker to pry open the kitchen door, walked toward the homeowner’s purse, *251 which was lying on a table, but the defendant ran away when he saw the homeowner on the stairway); Manning v. State, 568 So.2d 327 (Ala.Crim.App.1990) (before officer found him in an automobile with weapons, ski mask, and gloves, the defendant had pounded on doors and windows of a home, had entered and had then retreated at tip of the homeowner’s 12-gauge shotgun to an automobile, the engine of which was running and the trunk open); Holmes v. State, 497 So.2d 1149 (Ala.Crim.App.1986) (the defendant removed a window screen and rummaged through some billfolds and papers in kitchen, but ran away when the homeowner yelled at him); Gaskin v. State, 53 Ala.App. 64, 297 So.2d 388 (Ala.Crim.App.1974) (the defendant looked through windows and was refused access to the house, but gained access by cutting a screen door, left bloodstains in the house, and was later found asleep in his car parked out front, with a small cut on his hand); Young v. State, 51 Ala.App. 400, 286 So.2d 76 (Ala.Crim.App.1973) (homeowner arrived home to find a door pried open, several pieces of property missing, and the defendant diving out of her window).
In all of the above cases the defendant took steps beyond merely unlawfully entering the dwelling place of another— namely, steps that indicated an intent to steal. The cases cited above involved evidence of forced entry, disturbances of property, or flight, or some combination thereof. Though such evidence is not necessary to sustain a conviction for burglary, such evidence certainly contributes to the likelihood that the defendant had the requisite intent to steal.
Unlike the cases cited above, in this case there is no evidence of forced entry, disturbance of any property, or flight; neither do we have a case of an “unexplained breaking and entering into a dwelling house in the nighttime.” Popwell, supra (emphasis on “breaking and entering” added). Swearingen entered the apartment through an unlocked door and went upstairs toward the absent tenant’s bedroom. Swearingen did not break in, he did not touch any personal property, he did not flee when Humes confronted him, and he applied no force or threat of force to anyone. He explained to Humes that he was looking for “Allison.”
The best evidence we have before us regarding Swearingen’s intent are his own words: he expressed a desire to talk to Allison Segal. This Court appears to permit the jury merely to speculate, not infer, by permitting the jury to find here an intent to steal. It is just as likely that Swearingen had an intent to talk to Segal, or to leave a secret love note, or to commit a felony. But it is the glaring lack of evidence that allows such speculation.
The significant fact is that Swearingen was unlawfully in Humes’s dwelling, which for the majority of this Court is apparently sufficient to permit a jury to infer that Swearingen had the intent to commit a theft or a felony. I believe that allowing such an inference in this case unduly stretches the language of the burglary statute and this Court’s interpretations of that statute.[2] In future cases, the distinc *252 tion between second-degree burglary (a Class B felony) and first-degree criminal trespass (a Class A misdemeanor) will undoubtedly be blurred by the majority’s holding today.
However, the majority disagrees with me and affirms Swearingen’s conviction for burglary in the second degree. Therefore, I find it necessary to address Part II of the opinion. I concur with the majority’s holding in Part II that Swearingen is entitled to a new sentencing hearing.

. One is guilty of criminal trespass in the first degree if he or she "knowingly enters or remains unlawfully in a dwelling." § 13A-7-2(a), Ala.Code 1975.

. Even a conviction under common-law burglary required more evidence of intent than was shown here:
“As to the intent; it is clear, that such breaking and entry must be with a felonious intent, otherwise it is only a trespass. And it is the same, whether such intention be actually carried into execution, or only demonstrated by some attempt or overt act, of which the jury is to judge.”
4 William Blackstone, Commentaries on the Laws of England, 227 (1769) (emphasis added).